REISMAN ET AL., DOING BUSINESS AS TRAMMELL, RAND & NATHAN, *v.* CAPLIN ET AL.

No. 119.   Argued December 12, 1963.—Decided January 20, 1964.

*Warren E. Magee* argued the cause for petitioners. With him on the briefs was *Hans A. Nathan.*

*Assistant Attorney General Oberdorfer* argued the cause for respondents. With him on the ·brief for respondent Caplin were *Solicitor General Cox, Stephen J. Pollak, Joseph M. Howard* and *Norman Sepenuk.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioners, attorneys for taxpayers Martin J. and Allyn Bromley, seek declaratory and injunctive relief against respondent Caplin, the Internal Revenue Commissioner, and the accounting firm of Peat, Marwick, Mitchell & Co., which at the instance of petitioners has been working on the financial records of the Bromleys. Petitioners claim as null and void summonses issued by the Commissioner,

under § 7602 [1] of the Internal Revenue Code of 1954, to Peat, Marwick, Mitchell & Co., directing the production of "all audit reports, work papers and correspondence" in that firm's custody pertaining to Mr. Bromley and his several business interests. The contention is that the enforced production of the papers is an unlawful appropriation of petitioners' work product and trial preparation as well as an unreasonable seizure requiring the Bromleys to incriminate themselves and depriving them of the effective assistance of counsel. The District Court concluded that petitioners had no standing to sue; that the complaint failed to state a cause of action; that none of the papers were the work product of the petitioners; and, that the papers did not fall within the attorney-client privilege. The Court of Appeals affirmed, but on the entirely different theory that the suit was, in substance, one against the United States to which it had not con-

---

[1] "§ 7602. Examination of books and witnesses.

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

sented. 115 U. S. App. D. C. 59, 317 F. 2d 123. We granted certiorari, 374 U. S. 825, and have concluded that petitioners have an adequate remedy at law and that the complaint is therefore subject to dismissal for want of equity. This obviates our passing upon any of the other questions presented.

## I.

Petitioner Reisman, an attorney of California, had for several years represented the Bromleys. In April 1960 he associated with himself the three other attorney petitioners of Washington, D. C., as counsel in connection with the Bromleys' tax matters. Petitioners employed the accounting firm of Peat, Marwick, Mitchell & Co. to assist them in connection with certain civil and criminal tax proceedings arising from the alleged tax liability of the Bromleys. Under the supervision of the petitioners, the accountants analyzed various original records of Mr. Bromley and his business interests and made periodic reports thereof. The products of the joint work of the accountants together with all of the records and papers of Bromley furnished them by the petitioners were kept separate in the accounting firm's files and labeled as the property of petitioners.

The subpoenas were served on June 13, 1961, after Bromley had refused to make his papers available upon being informed that a criminal investigation against him was pending. The subpoenas were directed to three separate branches of Peat, Marwick, Mitchell & Co., located in Los Angeles, Chicago, and New York. They required the accountants to testify before a special agent of the Commissioner on the work performed and also to produce all documents, work papers and other material in their possession with regard to the Bromley matters. At the time of service there were four civil tax cases pending in the Tax Court contesting alleged deficiencies in income tax

returns of the Bromleys.[2]   In addition, a criminal investigation of Mr. Bromley on the tax matters was in progress. None of the parties involved here had prepared the tax returns under scrutiny nor advised the Bromleys with regard to the same.

On July 7, 1961, petitioners filed the complaint involved here.   They alleged that Peat, Marwick, Mitchell & Co. intended to comply with the subpoenas.[3]   This would result, they claimed, in an unlawful appropriation of their work product and trial preparation as well as an unconstitutional seizure of confidential and privileged documents for future use in civil and criminal litigation against petitioners' clients, the Bromleys.   They moved for and obtained a temporary restraining order which was later dissolved when the complaint was dismissed.   On appeal the Court of Appeals for the District of Columbia held that the complaint was properly dismissed because "it is not within the court's jurisdiction because it is in substance a suit against the United States to which it has not consented."   115 U. S. App. D. C. 59, 61, 317 F. 2d 123, 125.

The case reaches us at a stage when the only affirmative action taken by the Commissioner is the issuance of the summonses for the accountants to appear before a hearing officer, i. e., a special agent of the Internal Revenue Service, to testify and produce records.   The accountants have not yet refused to do so.   It is therefore necessary that we first consider the statutory scheme which Congress has provided for the issuance and enforcement of the summonses.

---

[2] These have been heard and are now under advisement in the Tax Court.

[3] In their answer Peat, Marwick, Mitchell & Co. admitted the essential allegations in the complaint, except the one alleging that they would voluntarily comply with the subpoenas.   As to this they said compliance "could compromise trial preparations" in the Tax Court cases.   They joined the prayer of petitioners for relief.

## II.

Section 7602 authorizes the Secretary of the Treasury, or his delegate, for "the purpose of ascertaining the correctness of any return . . . , determining the liability of any person for any internal revenue tax . . . , or collecting any such liability . . . [t]o summon the person liable for tax . . . , or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . , or any other person the Secretary or his delegate may deem proper, to appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . ." The petitioners make no claim that this provision suffers any constitutional infirmity on its face. This Court has never passed upon the rights of a party summoned to appear before a hearing officer under § 7602. However, the Government concedes that a witness or any interested party may attack the summons before the hearing officer. There are cases among the circuits which hold that both parties summoned and those affected by a disclosure may appear or intervene before the District Court and challenge the summons by asserting their constitutional or other claims. *In re Albert Lindley Lee Memorial Hospital,* 209 F. 2d 122 (C. A. 2d Cir.); *Falsone* v. *United States,* 205 F. 2d 734 (C. A. 5th Cir.); and *Corbin Deposit Bank* v. *United States,* 244 F. 2d 177 (C. A. 6th Cir.). We agree with that view and see no reason why the same rule would not apply before the hearing officer. Should the challenge to the summons be rejected by the hearing examiner and the witness still refuse to testify or produce, the examiner is given no power to enforce compliance or to impose sanctions for noncompliance.

If the Secretary or his delegate wishes to enforce the summons, he must proceed under § 7402 (b), which grants the District Courts of the United States jurisdiction "by

appropriate process to compel such attendance, testimony, or production of books, papers, or other data." [4]

Any enforcement action under this section would be an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete protection to the witness. In such a proceeding only a refusal to comply with an order of the district judge subjects the witness to contempt proceedings.

## III.

It is urged that the penalties of contempt risked by a refusal to comply with the summonses are so severe that the statutory procedure amounts to a denial of judicial review. The leading cases on this question are *Ex parte Young*, 209 U. S. 123 (1908), and *Oklahoma Operating Co.* v. *Love,* 252 U. S. 331 (1920). However, we do not believe that this point is well taken here. In *Young* certain railroad rates could be tested only by a failure to comply, which occasioned a risk of both imprisonment and large fines, regardless of the willfulness of the refusal to comply. And in *Oklahoma Operating Co.* the laundry rate fixed by the Oklahoma Corporation Commission could be tested only by contempt with a penalty of $500 per day, each day being a separate violation.

On the other hand, in tax enforcement proceedings the hearing officer has no power of enforcement or right to levy any sanctions. It is true that any person summoned who "neglects to appear or to produce" may be prosecuted under § 7210 [5] and is subject to a fine not exceeding

---

[4] Section 7604 (a) and (b) gives an additional remedy which is considered hereafter.

[5] Internal Revenue Code of 1954, § 7210: "Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda, or other papers, as required under sections 6420 (e) (2), 6421 (f) (2), 7602, 7603, and 7604 (b), neglects to appear or to produce such books, accounts, records, memoranda,

$1,000, or imprisonment for not more than a year, or both. However, this statute on its face does not apply where the witness appears and interposes good faith challenges to the summons. It only prescribes punishment where the witness "neglects" either to appear or to produce. We need not pass upon the coverage of this provision in light of the facts here. It is sufficient to say that noncompliance is not subject to prosecution thereunder when the summons is attacked in good faith.[6]

Petitioners also point to § 7604 (b) [7] as posing the risk of arrest should the Commissioner proceed under that section for an "attachment . . . as for a contempt." Argu-

---

or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution."

[6] The only prosecution under § 7210 is *United States* v. *Becker,* 259 F. 2d 869. There the word "neglect" was equated with willfulness. The Government admits that the section is inapplicable to persons who appear and in good faith interpose defenses as a basis for noncompliance. Brief for the Respondent Caplin, pp. 9, 22. Cf. *Federal Power Comm'n* v. *Metropolitan Edison Co.,* 304 U. S. 375, 387 (1938).

[7] Internal Revenue Code of 1954, § 7604 (b): "Enforcement.— Whenever any person summoned under section 6420 (e)(2), 6421 (f)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

ably, such a sanction, even though temporary, might be a penalty severe enough to bring the section within the rationale of *Young, supra,* but we do not so read § 7604 (b). This section provides that where "any person summoned . . . neglects or refuses to obey such summons" the Commissioner may proceed before the United States Commissioner or the judge of the District Court "for an attachment against him, as for a contempt." Upon a showing of "satisfactory proof," an attachment for the person so refusing is issued and he is brought before the United States Commissioner or the district judge who proceeds "to a hearing of the case." Upon the hearing the United States Commissioner or the district judge may "make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts . . . ." The predecessor of § 7604 (b) was adopted by the Congress in 1864 (13 Stat. 226) at a time when Congress was greatly concerned with tax collection delay. Cong. Globe, 38th Cong., 1st Sess. 2440–2441 (1864). The proponents of the bill emphasized that after arrest the witness could assert his objections to the summons. Cong. Globe, 38th Cong., 1st Sess. 2997 (1864). It appears to us that the provision was intended only to cover persons who were summoned and wholly made default or contumaciously refused to comply. Section 7402 (b) came into the statute in 1913 (38 Stat. 179) and has been uniformly used since that time.[8] As we read the legislative history, § 7604 (b) remains in this

---

[8] It is true that the attachment procedure of § 7604 (b) has been occasionally used even where the person summoned refused to testify because of a claimed privilege. *E. g., Sale* v. *United States,* 228 F. 2d 682, and *Brownson* v. *United States,* 32 F. 2d 844. We believe that the use of § 7604 (b) in that context is inappropriate. Attachment of a witness who has neither defaulted nor contumaciously refused to comply would raise constitutional considerations, which need not be considered at this time under our reading of the statute.

comprehensive procedure provided by Congress to cover only a default or contumacious refusal to honor a summons before a hearing officer. But even in such cases, just as in a criminal prosecution under § 7210, the witness may assert his objections at the hearing before the court which is authorized to make such order as it "shall deem proper." § 7604 (b).

Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, *Boren* v. *Tucker*, 239 F. 2d 767, 772–773, as well as that it is protected by the attorney-client privilege, *Sale* v. *United States*, 228 F. 2d 682. In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene. See *In re Albert Lindley Lee Memorial Hospital, supra,* and *Corbin Deposit Bank* v. *United States, supra.* And this would be true whether the contempt be of a civil or criminal nature. Cf. *McCrone* v. *United States,* 307 U. S. 61 (1939); *Brody* v. *United States,* 243 F. 2d 378. Finally, we hold that such orders are appealable. See *O'Connor* v. *O'Connell,* 253 F. 2d 365 (C. A. 1st Cir.); *In re Albert Lindley Lee Memorial Hospital, supra; Falsone* v. *United States, supra; Bouschor* v. *United States,* 316 F. 2d 451 (C. A. 8th Cir.); *Martin* v. *Chandis Securities Co.,* 128 F. 2d 731 (C. A. 9th Cir.); *D. I. Operating Co.* v. *United States,* 321 F. 2d 586 (C. A. 9th Cir.). Contra, *Application of Davis,* 303 F. 2d 601 (C. A. 7th Cir.). It follows that with a stay order a witness would suffer no injury while testing the summons.

Nor would there be a difference should the witness indicate—as has Peat, Marwick, Mitchell & Co.—that he

would voluntarily turn the papers over to the Commissioner. If this be true, either the taxpayer or any affected party might restrain compliance, as the Commissioner suggests, until compliance is ordered by a court of competent jurisdiction. This relief was not sought here. Had it been, the Commissioner would have had to proceed for compliance, in which event the petitioners or the Bromleys might have intervened and asserted their claims.

Finding that the remedy specified by Congress works no injustice and suffers no constitutional invalidity, we remit the parties to the comprehensive procedure of the Code, which provides full opportunity for judicial review before any coercive sanctions may be imposed. Cf. *United States* v. *Babcock,* 250 U. S. 328, 331 (1919).

*Affirmed.*