**UNITED STATES and Donald B. Nettle, Special Agent of the Internal Revenue Service, Petitioners,**

**v.**

**J. W. BALDRIDGE and Harold B. Mills, Respondents,**

**and**

**Charles A. Reich, Intervenor.**

**Misc. No. 67–H–52.**

United States District Court
S. D. Texas,
Houston Division.

Feb. 27, 1968.

A. Reich, who has intervened on the side of the respondents.

Hearing on the petition for enforcement of the summonses was held on December 21, 1967. A transcript of the testimony adduced at the hearing was subsequently prepared and filed and the questions presented have been briefed by the parties.

The government seeks to discover by virtue of this proceeding all the information maintained by Baldridge concerning the preparation of all tax returns of Charles A. and Betty J. Reich for the years 1963 through 1966, including work papers, financial statements, memoranda, balance sheets and correspondence. The government also desires copies of Charles A. and Betty J. Reich's income tax returns for the years 1963 through 1966. Finally, the government seeks copies of employment tax returns, Form 941, filed for all quarters of the aforementioned years, including copies of Forms W–2 and W–4, and copies of any Forms 1099 and 1096 for the years in question. The breadth of the scope of the summonses is somewhat misleading since the government is mainly interested in compelling the production of Baldridge's work papers and the taxpayer's cancelled checks, invoices and bank statements.

Morton L. Susman, U. S. Atty., and Joel P. Kay, Asst. U. S. Atty., Houston, Tex., for petitioners.

Mills & Powers, Gerald H. Beckman, Houston, Tex., for respondents and intervenor.

### Memorandum

INGRAHAM, District Judge.

This is a proceeding to enforce Internal Revenue summonses brought by the government pursuant to Secs. 7602 and 7604, Internal Revenue Code of 1954. The parties involved, aside from the United States, are the respondents, J. W. Baldridge and Harold B. Mills, who are the taxpayer's bookkeeper and attorney respectively, and the taxpayer, Charles

### I.

The facts of the case as found by the court are as follows: Special Agents Nettle and Bushager first contacted the taxpayer on August 30, 1967, at his office. After identifying themselves as special agents, they informed Reich that they were investigating his income tax returns for the years 1963 through 1966. When the agents inquired about the taxpayer's records, he told them that he did not keep a set of books and that the only records he had in the office were some cancelled checks, bank statements and invoices. Reich further stated that he normally delivered the cancelled checks, bank statements and invoices representing cash expenses to Baldridge, his bookkeeper, during the filing season and

that Baldridge kept these records at his office.

J. W. Baldridge is a public bookkeeper without formal training in accounting who was employed by Reich in March, 1964, to prepare his income tax returns. Baldridge prepared returns for the years 1963 through 1966. He also prepared quarterly payroll reports from 1964 through the third quarter of 1967. Baldridge testified that Reich brought his records to Baldridge's office twice a year and that he used this information to prepare "journals" and depreciation schedules. The "journals" referred to were, in fact, nothing more than a classification and summary of Reich's bank statements which were prepared for the purpose of enabling Baldridge to fill out Reich's income tax returns. The rudimentariness of these work papers was the result of the taxpayer's refusal to allow his bookkeeper to maintain a complete set of books. For convenience, Baldridge kept Reich's records at his office except on those infrequent occasions when he took them with him to Reich's office for consultation purposes. After consultation, the records were returned to Baldridge's office. It was only after the tax investigation which spawned this proceeding began that Reich made an attempt to secure the return of the records and work papers.

Baldridge testified that he had no agreement with the taxpayer concerning ownership of the records and work papers and that he had not given any consideration to the question of ownership before the initiation of this proceeding. Nevertheless, both Baldridge and Reich testified that the records and work papers were the taxpayer's property. The court finds this uncontradicted but self-serving testimony unconvincing and is of the opinion that the records and work papers were Baldridge's property. See Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965); United States v. Zakutansky, 68–1 U.S.T.C. Par. 9205 (N.D.Ind.1968). This conclu-

sion is further supported by Baldridge's testimony that he assumed that he would be able to see the records and work papers after their transfer if there was any question about the returns.

On September 5, 1967, the taxpayer telephoned Baldridge and requested that he meet him in the office of his attorney, Daniel P. Ryan. Baldridge was specifically instructed to bring with him the records and work papers which are the subject of this litigation. At the meeting Reich asked Baldridge to turn over the documents. Upon complying Baldridge was told that his services were no longer needed and that he was discharged. The taxpayer then gave the records and work papers to his attorney. Attorney Ryan testified that the transfer of the documents from Baldridge to Reich to Ryan was effected in anticipation of this proceeding.

Three days later Reich went to Ryan's office and discharged him and repossessed the documents. The taxpayer then delivered the records and work papers without delay to his new attorney, Mills, who is a respondent in this suit. On September 9 Mills employed Baldridge ostensibly for the purpose of assisting him in defending Reich against the assessment of any tax deficiency. Accordingly, Mills transferred the records and work papers to Baldridge the following week. Thus in a period of seven days the documents went through five separate transfers, the net result of which was to put them back where they were when all of this started. The only work Baldridge performed which was connected with the taxpayer after Mills delivered the documents was the preparation of Reich's third quarter payroll report. Mills was billed for this service though this was the type of work that Baldridge had traditionally performed for the taxpayer and for which he had previously billed the taxpayer directly.

■ Considering the circumstances of this case, the court finds that the records and work papers never left Baldridge's legal possession. The many transfers and hirings and firings were, to

paraphrase the government's brief, merely a frantic eleventh hour effort on the part of the taxpayer to put these records and work papers beyond the reach of the government. Any transfer of records and work papers after the institution of an income tax investigation should be carefully scrutinized by the courts. In the instant case such scrutiny clearly reveals that the sole purpose of the transfers was to attempt to put the documents in question beyond the government's reach. It would be clearly erroneous to attribute to these sham transactions the effect of transferring possession since to do so would violate the rule that the power of the Commissioner to investigate the records and affairs of taxpayers must be liberally construed. Falsone v. United States, 205 F.2d 734 (5 CA), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); United States v. McKay, 372 F.2d 174 (5 CA 1967). Moreover, acceptance of the taxpayer's contention would create a loophole in the tax laws that would severely hinder their enforcement. The court is aware of but declines to follow those cases which have viewed similar transfers in a more charitable fashion.*

To complete the story, on September 14 Special Agent Nettle met with Baldridge and Mills in the latter's office. Upon being informed that Baldridge was in possession of the records and work papers, Nettle served upon Baldridge one of the summons which the government is now seeking to enforce. Baldridge then stated that he would not comply with the summons since, in his opinion, the documents in question were in the legal possession of Attorney Mills. Accordingly, Nettle immediately served a second and identical summons upon Mills.

The return date for both summons was September 27. Both respondents appeared on that date but refused to produce the records and work papers on the grounds that they were privileged under the Fifth Amendment. The petitioners consequently instituted this proceeding. At the hearing, it was admitted that the documents involved have been returned to Mills' office.

## II.

The court's finding that the records and work papers are the property and in the possession of Baldridge has the effect of leaving but a single issue for determination. The issue is whether a taxpayer may assert the privilege against self-incrimination as to documents which he neither owns nor possesses. The answer must be in the negative.

■■ The rule is well settled that a party has no standing to invoke the privilege against self-incrimination as to evidence in the possession of another person even though the evidence was originally obtained from the person claiming the privilege and regardless of the incriminating nature of the evidence. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); In re Fahey, 300 F.2d 383 (6 CA 1961); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959). The court therefore holds that the records and work papers sought by the summonses are third party records beyond any claim of privilege against self-incrimination by the taxpayer. It follows that the records and work papers must be produced in accordance with the summons.

The clerk will notify counsel to draft and submit an appropriate order.

---

* United States v. Cohen, 68–1 U.S.T.C. Par. 9140 (9 CA 1967); United States v. Foster, Lewis, Langley & Onion, 65–1 U.S.T.C. Par. 9418 (W.D.Tex.1964); Application of House, 144 F.Supp. 95 (N.D.Cal.1956).

But see Bouschor v. United States, 316 F.2d 451 (8 CA 1963); Sale v. United States, 228 F.2d 682 (8 CA), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); United States v. Zakutansky, 68–1 U.S.T.C. Par. 9205 (N.D.Ind. 1968); United States v. Boccuto, 175 F. Supp. 886 (D.N.J.1959).