UNITED STATES of America and John P. Grady, Petitioners-Appellees,

v.

Joseph J. MERCURIO and Acme Circus Operating Company, Inc., Respondents,

v.

Kevin L. DONALDSON, f/k/a Merton H. Sweet, Intervenor-Appellant.

No. 27341.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1969.

Robert E. Meldman, Louis L. Meldman, Milwaukee, Wis., Edward H. Heller, Tampa, Fla., for intervenor-appellant.

Edward F. Boardman, U. S. Atty., Tampa, Fla., Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Lee A. Jackson, John P. Burke, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., for petitioners-appellees.

Before TUTTLE, WISDOM and BELL, Circuit Judges.

TUTTLE, Circuit Judge:

We have here for consideration against phase of the problem arising when a United States District Court is asked by an Internal Revenue special agent to enforce a subpoena requiring the production of records affecting a taxpayer.

The enforcement procedures were commenced under the authorization of Title 26, U.S.C.A. §§ 7602 and 7604.[1]

---

1. "§ 7602. Examination of books and witnesses.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or

The issue was raised in the following manner: (There are actually two cases involved here). On November 25, 1968, petitioners, United States of America and John P. Grady filed a petition to enforce Internal Revenue Service summons against respondent, Joseph J. Mercurio, and against Acme Circus Operating Company, Inc., two former employers of the taxpayer, Kevin L. Donaldson, formerly known as Merton H. Sweet, the taxpayer and the appellant here. Following the issuing by the trial court of its order to show cause, on December 9, 1968, intervenor Donaldson filed his motion to intervene as a respondent and to file an answer. On December 13, respondents filed their answers in which they stated that they were prepared to answer the subpoenas but for the granting of a temporary restraining order which had previously been issued by the trial court "until such time as an order of a court of competent jurisdiction has been issued requiring such compliance." On January 10, 1969, petitioners, United States of America and Grady, filed their opposition to the motion to intervene. On that date, a hearing was had on Donaldson's motion to intervene as respondent. Memoranda of law were filed in support of and in opposition to the motion and the matter was continued until January 16, 1969. On that date the court entered its order denying Donaldson's motion to intervene, and entered its order directing respondents to comply with the Internal Revenue summons. This order was later stayed pending appeal. Notice of appeal was filed on the same day and the matter is here now for our consideration.

It may clarify the discussion here to begin by stating what is *not* involved.

We do *not* have a case in which a subpoena has been issued at the instance of a special agent of the Internal Revenue Service against a *taxpayer* himself, seeking access to *his* records and papers and the right to take his testimony, such as was the case in United States v. Cohen, 9 Cir., 1967, 388 F.2d 464; nor is it a case in which the subpoena seeks to obtain records *of the taxpayer* in the hands of his attorney or accountant, which the courts have deemed the same as if they were in the possession of the taxpayer himself. See Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L. Ed.2d 459, and this court's recent decision in Stuart v. United States et al., 5 Cir., 416 F.2d 459; nor is it a case in which records actually belonging to the *taxpayer* are subpoenaed while in possession of some third person, but where no privilege exists.

To the contrary, what we have here is a subpoena served on two former employers of the taxpayer demanding the production of *their* own records, not the records of the *taxpayer*.

It would seem, upon the most casual observance of this situation, that if the United States were seeking to obtain these records in support of an actual prosecution, following indictment, appellant would have no basis for seeking to have the indictment quashed on the ground of a violation either of Fourth or Fifth Amendment rights, since there would have been no unreasonable search or seizure nor any compulsion of the taxpayer's giving evidence against himself. The issue that is here presented, therefore, depends solely upon the appellant's argument that the court's power to require a response to the subpoena must depend upon the validity of the

any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books,

papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

Section 7604 confers jurisdiction on the district court to require a response upon proper showing of such subpoena.

original subpoena itself; that the Internal Revenue Code authorization for the issuing of a subpoena is restricted to the obtaining of records and testimony where no criminal prosecution is in prospect or in contemplation. By alleging, in its petition to intervene, that the subpoena was not truly issued for one of the purposes authorized under Section 7602, appellant claims he was entitled to intervene to raise this issue, since the employers were not concerned about protecting any rights of appellant.

To sustain his right to intervene, the appellant, in his brief, cites Rule 24(a) of the Federal Rules of Civil Procedure.[2] However, in oral argument, appellant relied for his right to intervene solely on Reisman v. Caplin, supra. He claims that he should be given the relief of intervention as a matter of right. In order to test this question, since the trial court did not conduct an evidentiary hearing, we must look to the pleading by which appellant sought to intervene. Once again, it is necessary to point out what the petition does *not* contend: (1) It does not contend that the papers sought to be obtained from the former employer were *his* papers; (2) he does not contend any confidential relationship which under the rules of privilege would entitle him to prevent a disclosure by his former employer of any facts that might be relevant to the inquiry being made. In effect, the petition alleges that he has an interest in the subject matter of the investigation, which, of course, he has, that is, whether or not there has been a deficiency in the tax returns or tax payments made by the taxpayer and/or whether or not such deficiency is of such a nature as to warrant recommendation of prosecution for a crime against the revenues. However, it does *not* allege any fact which, if found in his favor, would warrant the trial court's quashing the subpoena against the third party.

The petition of the United States and John P. Grady was supported by an affidavit by special agents Miller and Grady as follows:

"In his capacity as special agent, he is assisting in the conduct of an investigation for the purpose of ascertaining the correct income tax liability of Merton H. Sweet, also known as Kevin L. Donaldson, for the years 1964 through 1967 inclusive."

In his motion to intervene, appellant alleges:

"Petitioner John P. Grady, special agent, and Bruce B. Miller, special agent, New Orleans, Louisiana, are guilty of bad faith both with the court and the intervenor in asserting that they have been conducting an investigation to ascertain the correct income tax liability of Kevin L. Donaldson, for the calendar years 1964, 1965, 1966 and 1967.

"John P. Grady is a special agent assigned to the intelligence division, Internal Revenue Service, Tampa Florida, and Bruce B. Miller is a special agent assigned to the Intelligence Division, Internal Revenue Service, New Orleans, Louisiana.

"The function of the Intelligence Division is to enforce the criminal statutes applicable to tax laws by developing information concerning alleged criminal violations thereof.

"Special Agent Bruce B. Miller was assigned the investigation of Kevin L. Donaldson for the calendar years 1964, 1965, 1966 and 1967 for the express and sole purpose of obtaining evidence concerning any violations of the criminal statutes applicable to the

2. "Rule 24(a): Intervention: (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

tax laws of the United States and special agent John P. Grady is assisting special agent Miller in this investigation."

These, then, are the allegations of the complaint upon which the appellant bases his contention that the issuance of a subpoena in support of such an investigation is beyond the authority contained in Section 7604. In making this contention, appellant relies heavily upon language of the Supreme Court in Reisman v. Caplin, supra. The particular language relied upon is as follows:

"Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege, Sale v. United States, 8 Cir., 228 F.2d 682. In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene. See In re: Albert Lindley Lee Memorial Hospital, supra, and Corbin Deposit Bank of Corbin, Ky. v. United States, supra [6 Cir., 244 F.2d 177] * * *."

Appellant contends that since the function of the special agents is to investigate to see whether a crime has been committed, no subpoena can be issued under the authority of Section 7602 because of the language of the Reisman opinion *"this would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution,"* citing Boren v. Tucker, supra.

This argument goes too far. In the first place, it will be noted that under the express language of the Act, the subpoena may be served upon the taxpayer himself or upon any other person having records relevant to the inquiry. It is also apparent that *there is no express limitation on the face of the statute* that the power to make the investigation to—ascertain "the correctness of any return, making a return where none has been made, determining the liability for any person for any internal revenue tax" limits the inquiry to such as will result *solely* in a proposed deficiency in tax or deficiency plus civil fraud penalties. Nor is there any limitation expressed on the face of the act that the inquiry may not be made if "determining the liability of any person for any internal revenue tax" or "ascertaining the correctness of [a] return" is made to assist the internal revenue service agents in determining *whether there is sufficient evidence that a crime against the revenues has been committed to warrant a recommendation* to the Justice Department that the case be marked for prosecution.

The investigation made by a special agent of the Internal Revenue Service, of which by this time the courts may take judicial notice, see footnote 3 in Wild v. United States, 9 Cir., 362 F.2d 206, at page 208,[3] includes the duty of

3. This footnote is as follows:
"30 Fed.Reg. 9399–9400 (July 28, 1965), 1966 CCH Stand.Fed.Tax Rep. § 5988, which provides:
"1118.6 Intelligence Division.
"The Intelligence Division enforces the criminal statutes applicable to income, estate, gift, employment, and excise tax laws (except those relating to alcohol, tobacco, narcotics and certain firearms), by developing information concerning alleged criminal violations thereof, evaluating allegations and indications of such violations to determine investigations to be undertaken, investigating suspected criminal violations of such laws, recommending prosecution when warranted, and measuring effectiveness of the investigation and prosecution processes. The Division assists other Intelligence offices in special inquiries, drives and compliance programs and in the normal enforcement programs, including those combating organized wagering, rack-

"developing information concerning alleged criminal violations thereof, evaluating allegations and indications of such violations to determining investigations to be undertaken, investigating suspected criminal violations of such laws, recommending prosecution when warranted, and measuring effectiveness of the investigation and prosecution processes." Most significant, it seems to us, is the citation by the Supreme Court in *Reisman* as the basis for its statements relative to criminal prosecutions, of the case of Boren v. Tucker, 9 Cir., 239 F.2d 767. In the *Boren* case, the Ninth Circuit enforced the subpoena. In doing so, it distinguished the case of United States v. O'Connor, D.C.Mass., 1953, 118 F.Supp. 248. The *Boren* opinion pointed out that in *O'Connor,* an indictment had already been returned against the taxpayer; that there was no other pending investigation; and the special agent was used as a means to cause a subpoena to issue as if the case were still in the investigatory stage. Pointing out the difference between the *O'Connor* case and that pending before it, the Court of Appeals for the Ninth Circuit, in *Boren,* said:

"It should be noted that the statute under consideration, by its language, does not limit the examination it authorizes solely to the issue of correctness. Section 7602 authorizes an examination for the purpose of 'ascertaining the correctness,' 'determining the liability of any person for any internal revenue tax,' * * * 'or collecting any such liability.' If a fraudulent tax return changes a taxpayer's liability, how could that fact be established without someone being required to come to a conclusion as to a possible criminal prosecution? Once an error has been established, it seems necessary for the examiner to come to some conclusion, one way or the other, as to whether there existed the possibility of criminal prosecution in the future. If no possibility exists, then one rule to determine liability comes into play—i. e., what tax should have been paid when the tax is correctly determined. If a possible criminal prosecution exists, then there is a possibility of another rule being used, the 50% penalty, to determine the correct tax. While it is true that once a possible criminal prosecution comes into existence there can be no settlement of tax until that possibility has been ruled out, yet the existence of the possibility of criminal prosecution does not necessarily mean that there will be criminal prosecution. The ultimate decision may be, (1) civil liability for the correct tax, (2) liability for the tax plus penalty, (3) criminal prosecution, or (4) both the penalty and the criminal prosecution. Helvering v. Mitchell, supra; 26 U.S.C.A. §§ 6653(b), 7201 et seq.

"In truth, we presume the 'Secretary or his delegate' would be unfaithful to his statutory responsibilities if in every examination, once an incorrect return has been demonstrated or established, he did not come to some preliminary conclusion as to whether there existed facts sufficient upon which to base a possible criminal prosecution, without coming to any conclusion as to whether there should be a criminal prosecution."

This court has recognized the same principle as stated in Boren in Venn v. United States, 5 Cir., 1968, 400 F.2d 207, at 210.

As we construe the motion to intervene, it simply says that since the subpoena has been issued by a special agent whose duty it is to aid in developing information relative to a possible prosecution this would amount to an "improper purpose of obtaining evidence for use in a criminal prosecution," within the language of the Supreme Court in *Reisman.*

eteering and other illegal activity, by providing investigative resources upon regional or National Office request. It also assists U.S. Attorneys and Regional Counsel in the processing of Intelligence cases, including the preparation for and trial of cases."

In view of the fact that there is no allegation in the complaint that even the special agent had recommended a prosecution, much less that the Internal Revenue Service had sent the case to the Department of Justice for the purpose of presentation to a grand jury, the investigation being made by the special agents would still, in our view, come within the authority granted within 7602, as described in the *Boren* opinion. A case which strongly supports this view is In re Magnus, Mabee & Reynard, Inc., 2 Cir., 1962, 311 F.2d 12.

We think it essential to bear in mind what seems to be so often unspoken in discussion of the power given under 7602 and 7604(b). Before indictment but after a potential criminal investigation commences, the courts have been somewhat troubled by the question of how much interrogation of the *taxpayer* is *constitutionally* permissible. Of course, after indictment, no subpoena can run against the accused.

There is no *constitutional* question as to the power of the Service to question, or subpoena records of *third parties* either before or *after* indictment. In cases in which the courts inveigh against the use of 7602 by a special agent, broad language is sometimes used to limit the authority because this effort has usually been made to obtain evidence from the taxpayer. The language is not apt and, is not controlling, if the subpoena power is being used to compel evidence by *third parties*. We have merely a problem of statutory construction of Section 7602.

There being no right which the appellant asserts that he could present to warrant the trial court's refusal to enforce the subpoena, the right to intervene has not been established. The language in *Reisman* "in addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene" is, of course, limited to the right to intervene if the person seeking the right can demonstrate to the court that he has interests to protect. Here, Donaldson's petition has alleged no such interest.

The trial court correctly denied the motion to intervene. The judgment is affirmed.