**UNITED STATES of America and Gerald T. Culver**

v.

**Robert I. WHITE.**

**Civ. A. No. 71–H–4.**

United States District Court, S. D. Texas, Houston Division.

April 7, 1971.

Anthony J. P. Farris, U. S. Atty., George Pain, Asst. U. S. Atty., Houston, Tex., John Dowd, Tax Division, Dept. of

Justice, Washington, D. C., for petitioners.

George A. Hrdlicka and Robert I. White, Chamberlain, Hrdlicka, White & Waters, Houston, Tex., for respondent.

## MEMORANDUM OPINION

BUE, District Judge.

This is an action instituted by the United States and Gerald T. Culver, Special Agent of the Internal Revenue Service, pursuant to 26 U.S.C. §§ 7604(a) and 7402(b) to enforce a summons served on Mr. White on December 7, 1970, requiring the production of records affecting his client, Mr. Roberts. These records consist of certain summaries and work papers prepared by Mr. Stanley H. Voelkel, an accountant, hired by the taxpayer, Mr. Roberts, to prepare tax returns for him and his wife for the period 1962 through 1968. This enforcement proceeding arises out of an investigation of the correctness of those tax returns for the years 1966 through 1969.

Subsequent to the commencement of this investigation, Mr. White, as attorney-in-fact to Mr. Roberts, requested and did receive possession of the accountant's work paper and files. Pursuant to the summons issued in this case, Mr. White appeared but failed and refused to produce the work papers and tax files prepared by and belonging to taxpayer's accountant.

An order to show cause was issued by the Court on February 23, 1971, requiring Mr. White to appear and explain his noncompliance, and a hearing was held on March 15, 1971, for that purpose.

Pending at this time is the Government's Motion for a Protective Order and to Quash Subpoenaes issued on Special Agent Culver and Revenue Officer Fendley for the production of the entire investigative file on Mr. Roberts. A Motion to Intervene, filed on behalf of Mr. Roberts, is also before the Court.

■ At the outset it should be realized that involved here is a subpoena issued against the taxpayer's attorney to secure records owned by the taxpayer's accountant. Transcript, page 42. Mr. White acquired possession of the records on behalf of the taxpayer for use in connection with his representation of the taxpayer. *Not* involved are any records *owned by the taxpayer,* whether in his own possession, United States v. Cohen, 388 F.2d 464 (9th Cir. 1967), or in the possession of his attorney or accountant, which the Courts have deemed the same as if they were in the possession of the taxpayer himself and have held subject to the taxpayer's privilege against self-incrimination. United States v. Mercurio, 418 F.2d 1213, 1214 (5th Cir. 1969). *See* Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

## I.

■ Under these controlling facts, the Court must determine whether or not the taxpayer, Mr. Roberts, should be allowed to intervene. The *Reisman* case provided a broad rule governing the allowance of intervention by the taxpayer:

[B]oth parties summoned and those affected by a disclosure may appear or intervene before the District Court and challenge the summons by asserting their constitutional or other claims. *Id.* at 455, 84 S.Ct. at 511. However, that language has been recently construed in United States v. Mercurio, 418 F.2d 1213, 1215 (5th Cir. 1969), aff'd sub nom., Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), not to require intervention by the taxpayer solely because he has an interest in the subject matter of the investigation. Rather, intervention is proper only if the taxpayer has a significantly protectable interest in the material sought to be obtained by the Government that would warrant "the trial court's quashing the subpoena against the third party." Thus, if it is shown that the papers sought by the Government are the taxpayer's own papers, or that there is some confidential relationship which under the rules of privilege would entitle him to prevent disclosure, the taxpayer

should be permitted to intervene. Here, the taxpayer does not own the records in question; they are the property of the accountants. He does not possess them; they are in the possession of his attorney, Mr. White.

The taxpayer contends, however, that he has constructive possession of the work papers, and thus, may assert his right against self-incrimination, and should be allowed to intervene. United States v. Cohen, *supra*, allowed a taxpayer who was in actual possession of his accountant's records to keep possession under the theory that possession imparts a sufficient interest in the records to enable the taxpayer to resist a Government summons. But unlike the case before me, the records and workpapers involved in *Cohen* were considered even by the accountant who prepared them to be the property of the taxpayer:

> Berke testified without contradiction that he considered all papers relating to his clients' affairs to be theirs to command, and that it had been his invariable practice to deliver such papers to the client whenever requested. * * Berke subsequently wrote to Beason, 'We have no interest in or right to possession of the records which we furnished Mr. Cohen and therefore have no right or obligation to ask him to return them to us.'

388 F.2d at 470. Contrarily, the testimony offered by Mr. Voelkel at the hearing firmly established that Mr. Voelkel and Mr. White considered the workpapers to be the property of the accountant. Transcript, pages 41 through 44. While it might be feasible to find constructive possession under the *Cohen* theory where the records *of the taxpayer* are in the hands of his attorneys or accountants, it is impossible to find such constructive possession where the taxpayer neither owns nor possesses the workpapers in question. Moreover, the *Cohen* case goes contra to an established line of authority which, although not directly in point, nevertheless should control in philosophy. United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R.

1202 (1944) and Wilson v. United States, 221 U.S. 361, 380, 382, 31 S.Ct. 538, 55 L.Ed. 771 (1911) both ruled that the papers and effects which the privilege protects must be the private property of the party claiming the privilege or be held in a purely personal capacity.

Furthermore, there is no accountant-client privilege recognized either in Texas or under the federal law, Falsone v. United States, 205 F.2d 734 (5th Cir. 1953). The attorney-client privilege cannot be asserted either, for the accountant's workpapers do not constitute confidential communications between attorney and client, and were compiled before Mr. White was ever hired. Too, much of the material contained in the accountant's work papers was published in the taxpayer's return, thus removing the cloak of confidentiality which is essential for the privilege. Bouschor v. United States, 316 F.2d 451, 457 (8th Cir. 1963); Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962). The mere delivery of the papers to the attorney does not create the privilege where it did not exist before, Falsone v. United States, *supra*.

## II.

Respondent argues that, even if the taxpayer is not allowed to intervene, the attorney in possession of an accountant's workpapers has an absolute standing to resist the Government's summons because of the taxpayer's privilege against self-incrimination. To that effect is cited United States v. Judson, 322 F.2d 460 (9th Cir. 1963); Application of House, 144 F.Supp. 95 (N.D.Cal.1966); Hughes v. Foster, Lewis, Langley & Onion, 65–1 U.S. Tax Cas. ¶ 9418 (W.D. Tex.1965). *In re House* is not applicable. There, the District Court found that, pursuant to an agreement between the accountant and taxpayers, "ownership in the papers [became] vested in the taxpayers at the moment of transfer of the papers to the taxpayers' agents," thus transferring not only possession but full title as well. 144 F.Supp. at 102. In *Judson*, too, the Court found that

the canceled checks and bank statements sought to be produced were the property of the taxpayer. That holding specifically distinguished cases in which an attorney asserted the privilege against self-incrimination concerning matter not owned or possessed by his client, In re Fahey, 300 F.2d 383 (6th Cir. 1961); Schwimmer v. United States, 232 F.2d 866 (8th Cir. 1956), stating that in such a case the client himself could not raise the privilege. 322 F.2d at 465. The court further found inapposite cases where the assertion was made "by. one not in fact the attorney of the privilege holder." In re Blumenberg, 191 F.Supp. 904 (S.D.N.Y.1960); 322 F.2d at 465. Also distinguished on the same grounds were United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959) and Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963). The court went further, disagreeing with the conclusions stated in *Bouschor* that the guarantee against self-incrimination "was never intended to permit [the witness] to plead the fact that some third person might be incriminated by his testimony, even though he was the agent of such person." 322 F.2d at 466.

Inasmuch as these cases cited by respondent support the proposition that the taxpayer's agent may assert the taxpayer's plea of self-incrimination as to incriminating materials *neither owned or possessed* by the taxpayer, the court declines to follow such pronouncements. *Cf.* United States v. Baldridge, 281 F. Supp. 470, 473 (S.D.Tex.1968).

### III.

The Government has filed a Motion for Protective Order or to Quash the Subpoena Duces Tecum issued for the purpose of securing the Government's investigative files on the taxpayer, Mr. Roberts. Respondent seeks discovery of these records to ascertain whether or not the Government's purpose in ordering the disclosure of the accountant's workpapers is proper, i. e., whether the Government seeks such workpapers solely in aid of a criminal investigation and prosecution.

In a summary enforcement proceeding under 26 U.S.C. § 7602, the right to discovery is governed by the discretion of the court pursuant to Rule 81 (a) (3) of the Federal Rules of Civil Procedure. *See* United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) as limited by Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). In United States v. Salter, 432 F.2d 697 (1st Cir. 1970), the Court held that respondent should not be able to obtain discovery simply by alleging improper purpose, but that a hearing should be held, and if evidence raised a substantial question in the court's mind regarding the validity of the Government's purpose, it might then grant discovery.

> The general solution would probably be for the district court to proceed directly to a hearing at which, if desired, the summonee could examine the agent who issued the summons, concerning his purpose. The court could then, by observation, and, where necessary, his own questioning of the agent, make its own determination of whether exploration, as by discovery, seem to be in order.

Pursuant to the methods suggested in *Salter*, a hearing was held at which time both petitioner and respondent were allowed to question Special Agent Culver at length. From the testimony there extracted, the court finds that, under the rule established in *Donaldson*, the Government's summons was issued pursuant to a valid purpose. In addition, the court ordered the production of the investigative file for an *in camera* inspection. The Court's conclusion subsequent to that inspection remains unchanged. I am compelled to find that the respondent has not demonstrated to the satisfaction of the Court a sound basis for discovery of the Government's investigative file.

### IV.

As previously stated, the Court finds that the Government's purpose in securing the accounting workpapers and files

from the taxpayer's attorney is proper. The *Donaldson* case, recently decided by the United States Supreme Court, is undisputably the controlling authority on this issue. Justice Blackmun, speaking for the Court, sought to clarify the widely cited dictum in Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L. Ed.2d 459 (1964):

> [T]he witness may challenge the summons on any appropriate grounds. This would include, as the circuits have held the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege. * * *

The Court noted that, despite the *Reisman* dictum, the Circuits almost uniformly approved the use of a summons in an investigation likely to lead to civil liability as well as to criminal prosecution,[1] and that courts have also approved the use of summons where the Government's alleged purpose is to uncover crimes, if no criminal prosecution has yet been instituted.[2] The Court continued:

> On the other hand, it has been said, usually citing *Reisman,* that where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied. *This, of course, would likely be the case where a criminal prosecution has been instituted and is pending at the time of issuance of the summons.*
>
> It is precisely the latter situation— where the sole object of the investigation is to gather data for criminal prosecution—which is the subject of the *Reisman* dictum [This] dictum is to be read in the light of its citation of *Boren,* and of Boren's own citation of *O'Connor*; when so read, the dictum comes into proper focus

as applicable to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes. (emphasis supplied, footnote omitted).

*Donaldson* further states that merely because a special investigator, such as Mr. Culver, is in the case, or because a full-scale tax fraud investigation is being conducted, does not, in itself, require the Court to find that the Government wants the records in question solely to prosecute criminally. Thus, the Court held that if no criminal prosecution has yet been recommended or instituted, the use of a summons in an investigation likely to lead to civil liability as well as to criminal prosecution is proper. To draw a line prior to reaching that stage of the investigation, the Court noted, would "stultify enforcement of federal law."

■ The Court's *in camera* investigation, combined with the testimony of Special Agent Culver at the hearing, revealed that the agent is definitely in pursuance of an investigation of both civil and criminal liabilities; that the agent definitely thinks that instances of criminal fraud are present that would warrant prosecution but that no recommendation to prosecute has yet been made. The Court finds further that the Special Agent also is investigating the taxpayer's possible civil tax liability. As *Donaldson* holds, a summons is proper at that stage, and the accountant's workpapers should be produced.

## V.

Accordingly, it is ordered that the Motion to Intervene of Mr. Louie Roberts is hereby denied. It is further ordered that the petitioner's Motion for Protective Order and to Quash Subpoenaes is granted.

The Court finds that the respondent has not shown to the satisfaction of the Court good cause for the non-compliance with the Internal Revenue Service summons issued by Special Agent Culver, di-

---

1. *See* the cases cited in the Court's footnote 13.

2. *See* the cases cited in the Court's footnote 14.

recting the respondent to appear before Agent Culver to testify and produce the records and papers set forth in the summons. It is ordered therefore that respondent Robert I. White should appear before Special Agent Gerald T. Culver in obedience to the summons issued on December 7, 1970, with the exception that the date, place and time for such appearance are to be mutually agreed upon by counsel as soon as practicable, with application to the Court only on inability to agree, and that the production of books, records and papers called for by the terms of the aforementioned summons and the giving of testimony concerning those records by respondent be limited to information concerning the correctness of the income tax return of Louie D. and Carolyn R. Roberts, but including information on any offer and compromise, as to each or any of the years 1966 through and including 1969.

This Memorandum and Order constitutes findings of fact and conclusions of law.