485 F.2d 1165
 73-2 USTC P 9748
 UNITED STATES of America et al., Petitioners-Appellees,
v.
Taylor MOORE and John Browne, Respondents-Appellants,
Sebastian J. Mirelez, Intervenor-Appellant.
UNITED STATES of America and Jack Hollenshead, Jr., Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Dougal C. POPE and Sebastian J. Mirelez, Respondents-Appellants.
 Nos. 72-2468, 72-2469.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1973.
 
 Taylor Moore, Charles E. Orr, John J. Browne, Houston, Tex., for respondents-appellants.
 Theo W. Pinson, III, Mary L. Sinderson, James R. Gough, Asst. U. S. Attys., Anthony J. P. Farris, U. S. Atty., Houston, Tex., John M. Dowd, Atty., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Meyer Rothwacks, Chief, Appellate Section, Robert E. Lindsay, Atty., Dept. of Justice, Washington, D. C., for petitioners-appellees.
 Before ALDRICH*, SIMPSON and CLARK, Circuit Judges.
 ALDRICH, Senior Circuit Judge:
 
 
 1
 These appeals from orders enforcing summonses issued under 26 U.S.C. Sec. 7602, although briefed by appellants in documents well-fitting the name, are not without some superficial difficulties.[1]
 
 
 2
 In April 1972, Nettle, a special agent of the Intelligence Division of the Internal Revenue Service, filed a petition in the district court naming Moore and Browne, (hereafter, for convenience, simply Moore) as respondent to enforce compliance with a subpoena duces tecum, served and returnable, but not complied with, some weeks before, for the purpose of determining the tax liabilities of Sebastian and Conception Mirelez (Mirelez) for the years 1967-70. The documents specified in the subpoena were records in Moore's possession showing payments by or for Mirelez to Moore for services or otherwise and payments by Moore to or for Mirelez; also all documents showing or relating to the acquisition, and the disposition, of interests in property, real, personal or mixed by Mirelez. Moore answered the petition by admitting the possession of documents called for, but moved to quash on five grounds. (1) the sole purpose of the subpoena was to prosecute a criminal matter; (2) respondent was an attorney, and some of the papers were "work products;" (3) all were covered by the attorney-client privilege; (4) some were owned by Mirelez, and subject to his Fifth Amendment claim; (5) the subpoena was too broad.
 
 
 3
 In addition, Mirelez sought to intervene "to claim the benefit of certain constitutional provisions which inure to his benefit." He sought to advance precisely claims (1)-(4) asserted by Moore, and two others of no conceivable import. The court denied this motion. An evidentiary hearing was then had on the petition.
 
 
 4
 At the hearing Nettle testified that his purpose was to determine the correctness of Mirelez's tax returns, and that the papers sought would be of assistance in this regard; that he had made no determinations as to deficiencies, nor any recommendations for prosecution, and had been in touch with no other department of the government, but that if a basis for criminal prosecution for unpaid taxes or any other matter should come up, he would report it to the appropriate authorities.
 
 
 5
 On cross-examination Moore, (represented by the same attorneys[2] who had sought intervention on behalf of Mirelez), after showing that the Intelligence, rather than the Audit, division of the Internal Revenue Service initiated the investigation, embarked on a course of questioning cut short by the court quite apparently on the ground that the answers, no matter how favorable to the respondent, would have been irrelevant. Respondent was thus prevented from showing who alerted the Intelligence Division; whether it was someone handling narcotic cases; whether Mirelez was suspected, and there was a purpose to procure evidence of narcotic violations, and whether there was a writing in the file that disclosed that this was "a criminal case." To this last respondent made an offer of proof that "the file would show this is a criminal case," adding as an afterthought, "purely criminal case."
 
 
 6
 In the course of the cross-examination respondent was permitted to ask whether "there has already been a decision made to obtain a criminal prosecution," in context embracing narcotics as well as tax prosecutions. The witness' negative answer to this question was neither contradicted nor prospectively weakened by the excluded questions, unless by the offer of proof just quoted.
 
 
 7
 No evidence was offered supportive of the claim that the papers in respondent's possession were "work products" of counsel as alleged in the answer, or matters covered by the attorney-client privilege. Even the court's offer to inspect in camera was declined. Nor, except for a bare assertion, are these points made in appellants' brief. In the light of this, and the descriptions contained in the summons themselves, which seem quite unsupportive of respondent's claims, not only is the appeal on these issues frivolous, but, with the burden on respondent, so was the defense ab initio. United States v. Johnson, 5 Cir., 1972, 465 F.2d 793. The Fifth Amendment defense, if not frivolous ab initio, disappears in the light of Couch v. United States, 1/9/73, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 and is not pressed in appellants' brief.
 
 
 8
 The court issued an order enforcing the summons, but stayed it during respondent's and Mirelez's appeals. We consider first the allegedly unlawful purpose of the summons.
 
 
 9
 The extended controversy over the right of the Internal Revenue Service to pursue a taxpayer's records when they might be in aid of a criminal prosecution reached the Supreme Court recently in Donaldson v. United States, 1971, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, as a result of varying interpretations of the Court's opinion in Reisman v. Caplin, 1964, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459. The Donaldson court rejected, as an objection to the subpoena, the circumstance that the "investigation . . . has the potentiality of resulting in a recommendation that a criminal prosecution be instituted against the taxpayer." (400 U.S. at 532, 91 S.Ct. at 543). It held that the fact that there were "combined efforts . . . directed to both civil and criminal infractions; and that any decision to recommend prosecution comes only after the investigation is complete or is sufficiently far along to support appropriate conclusions," (535, 91 S.Ct. at 544) was permissible. "We hold that under Sec. 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." (536, 91 S.Ct. at 545).
 
 
 10
 We must take this to mean that the fact that a taxpayer may be on a list of suspected narcotic violators is no more significant than if he is suspected of possible criminal tax violations. The question in both instances is, was there a concommitant purpose of a civil audit of income.[3] The extensive attempts to cross-examine the agent, with the possible exception of the afterthought in the offer of proof, as well as such argument as we can find in appellants' brief, ignore Donaldson's rationale, but suggest no other.
 
 
 11
 Nor do we think a turnaround is to be effected by respondent's offer of proof. Passing the fact that the added after-thought went beyond the question, cf. Coral Gables, Inc. v. Beerman, 1936, 296 Mass. 267, 269, 5 N.E.2d 554, 555, not having seen the file, respondent could but guess what was in it. While a substantial amount of hope must be permitted, it is impossible to conceive that the government file would have shown that the sole purpose of a tax investigation was to supply evidence of narcotics violations. As the government properly observes, if narcotics transactions were revealed in the sought-after records of payments, it is almost inevitable that tax non-disclosures would equally be involved. Cf. United States v. Troupe, 8 Cir., 1971, 438 F.2d 117. We find nothing to take the case out of Donaldson.
 
 
 12
 We may assume, with respect to intervention, that the claims asserted in the petition here were, on their face, of the sort for which intervention could properly be sought. Whether the court had discretion to deny the petition is another question. As a general principle language could be found both ways. See Couch v. United States, ante; United States v. White, S.D.Tex.1971, 326 F. Supp. 459, 461-462. Compare Donaldson, ante, 400 U.S. at 527-531, 91 S.Ct. 534; cf. United States v. Newman, ante. In this case, however, we are not faced with mere pleadings, but a record clearly indicating that any error was nonprejudicial, since taxpayer proved to be "adequately represented by existing parties." F.R.Civ.P. 24(a)(2). Martin v. Kalvar Corp., 5 Cir., 1969, 411 F.2d 552. The third party respondent was anything but indifferent to taxpayer's interest. He sought to assert precisely the grounds that taxpayer sought to raise, and not only was he taxpayer's own attorney, but he was represented by the same attorney that taxpayer employed to represent himself. So active was respondent in the prosecution of the defense that he had to be admonished by the court for interfering with counsel. In the light of all this it is not surprising that we find in the brief no suggestion of what Mirelez lost by not being allowed to conduct his own attack upon the summons.
 
 
 13
 One or two other matters touched upon in the district court but not briefed at all, even by the most charitable view, must be taken as waived.[4]
 
 
 14
 Affirmed.
 
 
 
 *
 Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation
 
 
 [1]
 No separate question is raised in case No. 72-2469, United States v. Pope, jointly briefed and argued herewith
 
 
 [2]
 Strictly, there was cross-representation in this case and No. 2469, n. 1, ante. On the appeals one attorney represented everyone
 
 
 [3]
 To the extent that more is sought to be read into the opinion in United States v. Salter, 1 Cir., 1970, 432 F.2d 697, in which the writer of the present opinion participated, it is to be noted that Salter was pre-Donaldson. Donaldson had a number of consequences. See United States v. Newman, 5 Cir., 1971, 441 F.2d 165
 
 
 [4]
 At oral argument, our attention was directed to the fact that subsequent to the proceedings below, the IRS made a jeopardy assessment and recommended criminal tax prosecution of Mirelez, and a narcotics indictment was returned against him. Even if such actions taken against a non-party taxpayer prior to the entry of an enforcement order were relevant to the propriety of entering the order, we hold that such actions taken during the pendency of an appeal are not relevant to enforcibility. Cf. In re Magnus, Mabee & Reynard, Inc., 2 Cir., 1962, 311 F.2d 12, 16, cert. denied 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198. To hold otherwise would provide an added incentive to taxpayers to file appeals merely for delay, and would needlessly stultify the enforcement of federal law. We do not hereby subject taxayers to irremediable harm, since he may "to the extent he may claim abuse of process, . . . always assert . . . that claim in due course at its proper place in any subsequent trial." Donaldson, ante, 400 U.S. at 531, 91 S.Ct. at 542. A judicial decision that enforcement of the summons is proper is not a predetermination of the admissibility of evidence gained by it in a subsequent criminal proceeding. United States v. Roundtree, 5 Cir., 1969, 420 F.2d 845, 852 n. 16