In the Matter of the Application to Enforce an Investigative Subpoena Ad Testificandum of the **UNITED STATES SECURITIES & EXCHANGE COMMISSION**, Petitioner,

v.

**Jakob ISBRANDTSEN**, Respondent.

United States District Court
S. D. New York.

Sept. 21, 1965.

Llewellyn P. Young, Regional Administrator, S. E. C., New York City, for petitioner; Jack Becker, Barbara A. Lee and Lawrence M. Levy, New York City, of counsel.

Lord, Day & Lord, New York City, for respondent; Leonard S. Leaman, New York City, of counsel.

HERLANDS, District Judge.

Jakob Isbrandtsen (hereinafter "the witness") has moved, pursuant to Fed. R.Civ.P. 30 and 45, for an order "to quash a subpoena served" on him and issued by the Securities and Exchange Commission (hereinafter "SEC") or, "in the alternative, to terminate" his examination by the SEC.

The subpoena in question, dated August 26, 1965, was returnable on September 1, 1965 before the SEC's New York office. (Exh. 1, attached to the Leaman moving affidavit.)

The inquiry in connection with which the subpoena was issued is a non-public investigation by the SEC "in the Matter of The Equity Corporation and Bell Intercontinental Corporation" pursuant to Section 42(a) of the Investment Company Act of 1940 (hereinafter "the 1940 Act") "to determine whether violations of Sections 7(a), 12(d), 15(a), 15(c), 17(a), 17(d), 20(a) and 30(f), of the said Act and Rules 17d–1, 20a–1, 20a–2 and 30f–1 thereunder have occurred or are about to occur, and to determine whether officers or directors of The Equity Corporation have been guilty of gross misconduct or gross abuse of trust in respect of The Equity Corporation." (Exh. 1, attached to the Leaman moving affidavit.)

The SEC's orders dated February 20, 1964 and May 11, 1964, pursuant to which the investigation is being conducted, are annexed to the SEC's petition for an order compelling the witness to comply with the SEC's subpoena.

In the course of said investigation, the witness has already been examined on four occasions to the total extent of 342 pages, as follows: June 1, 1964 (112 pages); June 22, 1964 (19 pages); June 17, 1965 (106 pages); and June 29, 1965 (105 pages).

The transcript has been available to the witness's counsel for reading at the SEC's office; and he has, on several occasions, reviewed the transcript. He has also been given permission to purchase a copy of the transcript.

Shortly after the August 26, 1965 subpoena was issued, the witness filed the instant motion to quash in order to obtain "judicial protection."

The witness claims that he is being subjected to an "ad infinitum examination" on "the identical subject matter" which has "become unduly oppressive" and which constitutes "a perversion of the investigative process"; that he has "answered fully and completely all questions posed to him"; that the SEC "has had ample opportunity and has elicited all of the factual information known" by him; that the SEC is now attempting "to repetitively cross-examine" him by means of "various batteries of attorneys."

■ The SEC sharply disputes the foregoing assertions; and, in addition, argues that this court "lacks jurisdiction to quash the subpoena." This jurisdictional contention is sound.

The subpoena which the witness seeks to quash was issued pursuant to Section 42(b) of the 1940 Act (15 U.S.C. § 80a–41(b)). Neither this nor any other provision of the 1940 Act confers a right on the person subpoenaed to attack either the issuance or the substance of the subpoena prior to the return date thereof.

■ The exclusive procedure for the interposition of good faith objections to the validity of an investigative subpoena issued under the 1940 Act is supplied by Section 42(c) of the 1940 Act (15 U.S.C. § 80a–41(c)).

Section 42(c) provides, in substance, that, where a subpoenaed witness refuses to obey the subpoena, the SEC may apply to the appropriate district court for an order requiring the witness to comply with the subpoena; and, if the witness then fails to obey the court's order, he may be punished by such court as a contempt thereof. The witness may not properly move to quash the subpoena in advance of enforcement proceedings.

This conclusion is required not only by the wording of Section 42(c) but also by the decisions interpreting cognate provisions in other federal regulatory statutes. See, e. g., Reisman v. Caplin, 375 U.S. 440, 444–447, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Kulukundis, 329 F.2d 197, 199 (2d Cir. 1964); Application of Howard, 325 F.2d 917, 919 (3d Cir. 1963); Guaranty Underwriters, Inc. v. Johnson, 133 F.2d 54, 56 (5th Cir. 1943); Lesser v. United States, 230 F.Supp. 817, 818 (E.D. N.Y.1964); Fleming v. Arsenal Bldg. Corp., 38 F.Supp. 675, 677 (S.D.N.Y. 1940).

In order to obtain enforcement of the subpoena, the SEC itself has now moved for an order pursuant to Section 42(c),

requiring the witness to appear and testify in accordance with the specification of the subpoena dated August 26, 1965. Thus, the substantive merits of the witness's claims must be determined by the court.

■ The court has read the entire SEC transcript of the witness's examination. While, as a matter of partial phraseology, there appears to be some repetition in a few of the questions, this is normal and legitimate (indeed unavoidable) in a searching inquiry. There is not the slightest evidence of oppression, bad faith or any other impropriety on the part of the SEC investigators.

The witness was and is represented by able and experienced counsel throughout the questioning. His rights were respected by the examiners.

The underlying facts concerning the pending investigation and the materiality and relevancy of the witness's past and prospective testimony are adequately set forth in the SEC's papers. In point of record fact, the witness does not seriously claim that the evidence sought is immaterial or irrelevant.

■ In the conduct of its investigations, the SEC should be given a latitude of scope and a longitude of inquiry. Vital desiderata of public policy, Congressional purpose, and statutory interpretation require the courts to deal liberally with the SEC's inquisitorial power.

■ However, this power is not unbridled. Witnesses appearing before administrative investigative agencies have the right to be protected against oppressive tactics, unduly repetitive questioning designed to coerce a witness or to compel him to adopt the examiner's language, or any other procedure that violates standards of fundamental fairness and decency. In such a case the courts will not hesitate to give the witness judicial protection.

But the protective power of the court may not be invoked by a witness who is uncomfortable or embarrassed by a persistent and thorough examiner who is following out leads and checking possible inconsistencies.

The line of demarcation between persistent questioning and oppressive inquisition cannot be defined in advance. The individualizing facts and circumstances must be considered *ad hoc*. In the present case, the SEC has not crossed the forbidden line.

■ An SEC inquiry is not governed by judicial standards of proof. Leading questions may be asked. Hearsay may be elicited. Investigators are, by the very nature of their task, (especially in non-public hearings) interested in obtaining clues and leads. Even rumors may furnish helpful material, on the basis of which witnesses may be located and competent evidence unearthed.

These are but a few of the practical considerations that, realistically considered, require the courts to adopt a liberal attitude in judging the propriety of the investigative procedures and techniques of the SEC or any other similar investigative agency.

The SEC is charged by Congress with the administration of a number of statutes designed to regulate a complex and technical industry. Deliberately concealed violations of the securities laws are most difficult to detect. The SEC is often required to conduct extensive investigations and to inquire into intricate transactions.

The present investigation is particularly involved and complex. It would appear that the witness is connected with at least eight companies or corporations involved in transactions under inquiry. In view of the nature of the transactions and the ostensible connection of the witness with them, it is not unusual or unreasonable that he be interrogated several times.

On the basis of evidence obtained during the past year, the SEC's staff believes that the witness has additional knowledge concerning which he has not yet testified. The SEC also asserts that there are areas where apparent conflicts between the witness's testimony and that

of other witnesses subsequently interrogated require resolution.

The SEC claims (and there is nothing to indicate the contrary) that the subpoena in question was issued for the foregoing purposes.

In the supplemental affidavit of Jack Becker, an SEC attorney, and in the SEC's memorandum of law, the claim is reiterated that the SEC not only seeks to examine the witness with respect to new evidence in order to resolve existing apparent conflicts, but also to examine the witness regarding matters as to which he has not testified and of which the SEC believes he has personal knowledge. In the Becker affidavit just referred to, the SEC states that it intends to question the witness "concerning a transaction involving the tender-offer by Isbrandtsen Company for the stock of Twin Industries, Inc. (now known as Wheelabrator Corporation) in December 1962 and the subsequent merger in December 1963 of Twin Industries, Inc. and Wheelabrator, a division of Bell Intercontinental Corporation at the time of the merger." The affidavit continues as follows:

In June 1964, the staff questioned Isbrandtsen only generally with respect to his transaction since many of the facts were not known at that time. As a result of the information obtained in the investigation since June 1964, two further avenues of inquiry have appeared. First, aspects of the overall transaction about which Isbrandtsen has not previously been questioned have developed and require his testimony. Second, the recently developed evidence concerning the overall transaction appears to conflict with the testimony of Isbrandtsen given in June 1964. It is necessary to examine Isbrandtsen in order to pursue both these lines of inquiry.

The affidavit further states that the SEC intends to question Isbrandtsen about "his role in assisting in the financing of the purchase of Bowser, Inc. stock, which subject was only briefly touched upon in his previous testimony."

Upon the oral argument, the witness's counsel contended that the witness had already been extensively examined about these matters and that, therefore, the court should preclude the SEC from going forward with the lines of inquiry described in the Becker affidavit.

As already stated, the court has itself read the entire transcript. From this examination it would appear that the witness was not questioned at all about Bowser, Inc. stock. As to Twin Industries, Inc. and Wheelabrator Corporation, it does appear that these two companies were covered by certain questions. Thus, the court has observed that Twin Industries, Inc. has been mentioned at the following pages of the SEC transcript: session of June 1, 1964, pp. 10, 11, 12, 15, 23, 26, 27, 30, 31, 54, 55, 61, 63, 64; session of June 17, 1965, pp. 117,. 118, 119, 120, 121, 122, 123, 124, 125, 126, 128, 129; session of June 29, 1965, pp. 71, 72, 73, 74, 75, 76. Wheelabrator was mentioned as follows: session of June 1, 1964, pp. 10, 15, 21, 30, 61, 62, 64; session of June 17, 1965, pp. 127, 129; session of June 29, 1965, p. 8.

However, a reading of these pages of the transcript definitely demonstrates that the questioning was not in depth; the topics touched upon require further elaboration. In view of the SEC's statements of necessity, there is no sound basis upon which the court could find that the subjects within the SEC's inquiry have been exhausted.

The witness's motion to quash is denied.

The SEC's order to compel compliance is granted.

So ordered.