**UNITED STATES of America and Bernard O. Peller, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Norman H. EGENBERG, Respondent.**

Civ. A. No. 135–68.

United States District Court,
D. New Jersey.

Nov. 10, 1969.

David M. Satz, Jr., United States Atty., by James H. Jeffries III, U. S. Dept. of Justice, for defendant.

Messano & Messano, by Ralph P. Messano, Jersey City, N. J., for defendant.

## MEMORANDUM and ORDER

AUGELLI, Chief Judge:

This action is brought to judicially enforce a number of internal revenue summonses issued by petitioner Peller, pursuant to 26 U.S.C.A. § 7602, and served upon respondent Egenberg. Jurisdiction to enforce such summonses is vested in this Court by virtue of 26 U.S.C.A. §§ 7402(b) and 7604(a).

Petitioner Peller, a Special Agent, Intelligence Division, of the Internal Revenue Service, has been conducting an investigation to determine the income tax liabilities of respondent for the years 1960–1966. Respondent, a certified public accountant, has in his possession certain records belonging to some of his clients, which records were furnished to respondent by the clients for the purpose of having him prepare their income tax returns. It is these records that petitioner Peller wishes to inspect and copy. Accordingly petitioner, on September 7, 1967, served respondent with twelve summonses, which directed him to appear at the Regional Inspector's Office in New York City on September 19, and to bring with him the records of the several clients named in the summonses for the years therein specified. Of the twelve summonses served on respondent, only two are involved here at this time, those calling for production by respondent of the records in his possession belonging to Madame Leonie Rysanek and Mr. Mario Sereni.

Under 26 U.S.C.A. § 7602, the Secretary of the Treasury, or his delegate, for the purpose of determining a person's tax liability, is authorized to examine any books, papers, records, or other data that may be relevant or material in that connection, and to issue summonses to any person having possession of such documents to produce the same, and to give such testimony, under oath, as may be relevant or material to the matter under investigation. In an affidavit filed in support of his application for judicial enforcement of the summonses, petitioner stated that respondent appeared in

response thereto, but that he refused to testify or produce the records called for by the summonses. In an answering affidavit, respondent denied that he had in his possession the records demanded, except some receipted bills and cancelled checks of Madame Rysanek, and further stated that these items were produced when respondent and his lawyer appeared before petitioner and another Agent, named Skolnick, in response to the summonses on September 19. At that time, says respondent, copies of these items were made, and petitioner was informed that respondent was producing whatever records he had in his possession as called for by the summonses. Respondent also denied that he had refused to testify, and stated that he was not even asked to give any testimony in relation to the matter. An affidavit of respondent's attorney corroborates the story told by respondent.

In a second affidavit filed by petitioner, he stated that to the best of his knowledge, the records demanded by the twelve summonses were in the possession of respondent, and that his clients had indicated that all records turned over by them to respondent had not been returned, and further indicated a willingness on their part to allow the Internal Revenue Service to inspect said records. Respondent answered his affidavit by filing another in which he reiterated his denial of possession of the records, and alleged that the purpose of the investigation being conducted by petitioner was to gather information for use against respondent in a pending criminal proceeding. In this connection it is noted that on January 15, 1968, a thirty-count indictment was returned against respondent in the United States District Court for the Southern District of New York, charging him with bribery of a Tax Technician of the Internal Revenue Service, in violation of 18 U.S.C.A. § 201. That indictment is still pending.

At the hearing of this matter before the Court, it developed that when respondent was served with the twelve summonses on September 19, 1967, the only records [1] he had in his possession were some belonging to Madame Rysanek for the year 1962. Thereafter, respondent received from this same client additional records relating to 1963 and 1964; and from Mario Sereni, cancelled checks for the years 1963 and 1964. Respondent testified that these records were needed for use in tax cases involving said clients then pending before the Appellate Division of the Internal Revenue Service. The proofs show that when respondent received the records in question, he knew that internal revenue summonses had been served on Madame Rysanek and Mario Sereni in connection with an investigation of their income tax liabilities. With respect to the records belonging to the clients named in the other ten summonses, respondent testified that he did not have them in his possession, and that the same had been returned either to the clients or their representatives.

Testimony was adduced that Rysanek and Sereni had no objection to an examination of their records by the Internal Revenue Service, and that they had consented to having them turned over to petitioner for that purpose. As to the Rysanek records, the alleged consent to an examination of her papers was challenged by her lawyer. He stated his client was not willing to have her papers, in respondent's possession, turned over to petitioner for examination. Of course, it goes without saying, that if a § 7602 summons is issued for a proper purpose, no consent by the owner of the records demanded thereby is necessary in order to give it validity.

Respondent presently has in his possession some Rysanek and Sereni records for the years 1962 through 1968. Re-

---

1. The "records" involved in this case consisted principally of receipted bills and cancelled checks, evidencing items that would, in the preparation of income tax returns for respondent's clients, be treated as deductible expenses incurred in connection with their work.

spondent refuses to turn these records over to the Internal Revenue Service, basing his refusal to do so on his Fifth Amendment right against self-incrimination. He likewise, and for the same reason, declines to disclose the names of the representatives of those of his clients to whom records had previously been returned. During the course of the hearing, and against objection made by counsel for respondent, petitioner attempted to expand the allegations of his petition to include production of records for years in addition to the 1962–1964 period specified in the summonses. For the purposes of this case, it may be assumed that the petition covered these additional years.

Petitioner claims that the records sought by the twelve summonses are necessary for the determination of respondent's income tax liabilities for the years 1960 through 1966. Petitioner testified that respondent deposited in his bank account, refund checks issued to respondent's clients; that respondent allowed some of the clients to use his credit card; that respondent would loan money to his clients; and that respondent would recommend a particular broker to take care of his clients' insurance needs. All such transactions, according to petitioner, may have generated unreported taxable income, or, as stated by his counsel, "we at least believe", that the records would show income taxable to respondent, and not reported.

■ It is well settled that before a court will enforce summonses issued pursuant to 26 U.S.C.A. § 7602, the person seeking such enforcement must establish a legitimate purpose for his investigation. United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). If the sole purpose of the investigation is to obtain information for use in a criminal prosecution, the summonses will not be enforced. Wild v. United States, 362 F.2d 206 (9 Cir. 1966). But even if the information sought may be used in a criminal prose-

cution, the purpose of the investigation may still be legitimate if a "proper civil purpose" is present. United States v. DeGrosa, 405 F.2d 926 (3 Cir. 1969). It is also well settled that the Fifth Amendment privilege against self-incrimination can be invoked in civil and criminal proceedings, including investigations. In Re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); McCarthy v. Arndstein, 266 U.S. 34, 45 S. Ct. 16, 69 L.Ed. 158 (1924). And in Reisman v. Caplin, 375 U.S. 440, 84 S. Ct. 508, 11 L.Ed.2d 459 (1964), there is specific recognition that constitutional claims may be asserted in proceedings under Section 7602 of the Internal Revenue Code.

■ In evaluating a claim of privilege against self-incrimination, a court must consider the circumstances surrounding the assertion of the privilege and the likelihood that disclosures made by the witness, if compelled, would tend to incriminate him, or lead to incriminating evidence. See In Re U.S. Hoffman Can Corp., 373 F.2d 622 (3 Cir. 1969).

■■ The documents in respondent's possession, with respect to which he seeks to claim his Fifth Amendment privilege, admittedly belong to his clients. Some question was raised at the hearing that respondent's right to assert the privilege against self-incrimination might depend upon his ownership of, or title to, the documents in question. Such is clearly not the law. Mere possession, in a personal capacity, is enough. United States v. White, 322 U. S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); United States v. Cohen, 388 F. 2d 464 (9 Cir. 1967); Application of House, 144 F.Supp. 95 (N.D. Calif. 1956). It is not disputed in this case that the records which petitioner wishes to examine and copy were given to respondent by his clients, and that respondent still holds them in his personal capacity. Since, as previously stated, respondent is under indictment in the

United States District Court for the Southern District of New York for alleged illegal conduct arising out of his work in the tax field, this Court, upon a consideration of the record as a whole, finds that compelling respondent to produce at this time the documents sought by petitioner may tend to incriminate respondent, or lead to incriminating evidence.

 Additionally, there is some question as to the sufficiency of the connection between respondent's tax liability and the Rysanek and Sereni records which, as previously indicated, consist principally of receipted bills and cancelled checks. There was no tie-up of these specific records with the tax investigation of respondent. There must be a showing that the records sought to be examined are relevant and material to the matter under investigation. It is clear, of course, that the test of relevancy in such cases is broad. But it is equally clear that there must be the requisite nexus between the taxpayer and the records of some other person in order to justify compliance with the summonses. United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); United States v. DeGrosa, 405 F.2d 926 (3 Cir. 1969); United States v. Harrington, 388 F.2d 520 (2 Cir. 1968); Foster v. United States, 265 F. 2d 183 (2 Cir. 1959).

At the conclusion of the hearing in this case, the Court expressed a tentative view that the summonses should be judicially enforced. However, upon reflection and a review of the record as a whole, the Court concludes that enforcement should be denied because of an insufficient nexus between the records in question and respondent's tax liability, and also because of the Fifth Amendment right against self-incrimination asserted by respondent. For the reasons herein stated, the application for an order to judicially enforce the internal revenue summonses in this case will be denied, and it is so ordered, this 10th day of November, 1969.