ROBERT M. DVORAK and LAVONNE M. DVORAK a/k/a LAVONNE M. SWANSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dvorak v. Commissioner
Docket No. 12467-83.
United States Tax Court
T.C. Memo 1986-256; 1986 Tax Ct. Memo LEXIS 350; 51 T.C.M. (CCH) 1259; T.C.M. (RIA) 86256; June 23, 1986. Robert M. Dvorak and Lavonne M. Dvorak, pro se. Mary E. (Betsy) Pierce, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $1,990 in petitioners' Federal income tax for the year 1979. After concessions, the only issue presented for decision is whether petitioners are entitled to depreciate certain real and personal property. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are hereby *352 incorporated by this reference. Robert M. Dvorak resided in St. Paul, Minnesota, and Lavonne M. Dvorak resided in White Bear Lake, Minnesota, when they filed their petition in this case. They timely filed a joint Federal income tax return for the year 1979. In 1971, Robert M. Dvorak (hereinafter referred to as petitioner) and his first wife, Mary Lou Dvorak, purchased 80 acres of property 6 miles northwest of Little Falls, Minnesota for $8,000. Twenty acres of the property were cleared and the remaining 60 acres were wooded. At the time of purchase, the property contained a single story car repair garage which measured 24 by 32 feet, and a shed which measured approximately 16 by 8 feet. Since 1971, petitioner, who is an engineer, has made improvements to the car repair garage, so that by 1979 it contained a two-story dwelling unit consisting of 7 bedrooms, one bathroom, a kitchen, a dining room, and a living room. In addition, the structure contained a two-story middle section with only outside walls and some inside improvements, an additional well and septic system, and a 3-car garage. At the back of the house is a pump house. Petitioner also improved the shed by doubling *353 its size, constructed a storage shed on the property, and enlarged the barn. Prior to purchasing materials for construction, petitioner requested bids from dealers. He hired casual local laborers and supervised the work himself. Petitioner did not retain records to support the costs of improvements to the property because he did not intend to rent or sell the property at the time he incurred the expenses. Petitioner did not attempt to locate the workers in preparation for this trial. Prior to and including 1979, petitioner purchased farming equipment, vehicles, small engines and tools, firewood preparing tools, machine tools, carpentry tools, plumbing tools, boats and marine equipment, household goods, and building supplies, some or all of which are stored on his property. Petitioner, his first wife Mary Lou Dvorak, and their children lived in the dwelling unit periodically between 1971 and 1978, when they were divorced and the property was placed in petitioner's name. In 1975, petitioner's employer transferred him to a job in Nebraska. Since late 1978, petitioners have rented the dwelling for $100 per month. In addition to rent, petitioner expected and received caretaker *354 services from the tenants. Petitioner has an agreement with a neighbor for the neighbor to oversee the wooded and cleared sections of the property in exchange for 75 percent of any profit derived from the land. Petitioner has not received any income pursuant to this agreement. Of the equipment located on the property, the tenant uses only a few items for maintenance. The tenant maintains one acre of the property. Approximately 60 acres of the property are undeveloped woodlands (from which the tenant is entitled to take firewood), and 20 acres are cleared fields. Most items of equipment are either to be used for future improvements to the property or to be sold by petitioner. OPINION For the taxable year 1979, petitioners filed a joint Federal income tax return on which they claimed a loss of $6,905.04 from "rental property located at Little Falls, Minnesota." The claimed loss was calculated by subtracting $1,200 of rental income from $8,105.04 of expenses. The claimed expenses included depreciation ($5,555), payment on principal ($507.11), interest ($212.89), insurance ($312.70), taxes ($205.94), inspection trips ($920), and maintenance and repairs ($391.40). Petitioner *355 has conceded that the payments on principal are not deductible. Respondent has conceded that the claimed expenses for insurance, interest, taxes, inspection trips and repair and maintenance are deductible. In addition, respondent has conceded that petitioner's two-story dwelling unit, as well as one garage space, were held for the production of income. We must decide whether petitioners are entitled to a depreciation deduction in the amount of $5,555. This entails inquiries into whether the property (other than the two-story dwelling unit and one garage space which respondent has conceded) was held for the production of income, whether petitioners have adequately substantiated their claimed depreciable basis of $100,000 in the property and whether the useful life of the depreciable property is 18 years. Section 167 [1] provides for a deduction for the depreciation of property used in a trade or business or held for the production of income. While conceding that the rented home was held with the requisite profit motive, respondent maintains that the equipment stored on the property was held for personal purposes and thus is not eligible for depreciation. *356 The equipment at issue consists of farming equipment, vehicles, small engines and tools, firewood preparing tools, machine tools, carpentry tools, plumbing tools, boats and marine equipment, household goods, and building supplies. We conclude that the property is not eligible for depreciation because it was neither used in a trade or business nor held for the production of income. The deduction for depreciation is allowable only in cases in which a taxpayer has engaged in an activity with the objective of making a profit. Lemmen v. Commissioner,77 T.C. 1326, 1340 n. 16 (1981); Jasionowski v. Commissioner,66 T.C. 312, 319 (1976). Section 1.183-2(b)(1)-(9), Income Tax Regs., sets forth nine factors which should be considered in examining a taxpayer's profit motive, but emphasizes that "all facts and circumstances with respect to the activity are to be taken into account." Section 1.183-2(b), Income Tax Regs. Among the factors to be considered are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carring on the activity; (4) the *357 expectation that assets in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation. Respondent's determinations are presumed to be correct, and petitioners have the burden of proving otherwise. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Petitioner's testimony in this case has failed to convince us that the equipment was held with the requisite profit motive. Indeed, the record establishes that petitioner intended to use the equipment for personal purposes as soon as circumstances permitted him to return to his property. The record is clear that most of the equipment was not used by the tenant, whom petitioner regarded as a "caretaker" of his property. [2] Petitioner planned to use most of the equipment in the future to improve the 80-acre property, only one acre of which was currently being used in a profit-related activity. [3]
*358 At trial, petitioner suggested the following ways in which the equipment might have provided a profit: They can be sold for cash in terms of depreciated dollars * * *. Two, their value appreciates further as time passes, the average population diminishes and antiquity is enhanced. For instance, Old Velvet Tobacco cans bring a pretty good price in some marketplaces. Three, their value can be materially increased through restoration, repair and refurbishment. Four, they can be used to produce marketable and saleable products such as firewood and foodstuffs. And five, their restoration and their use can be part of a youth training program or an old folks' project. Six, these items have museum value, therefore allowing one to charge admission * * *. Number seven, they have rental value in marine products about a mile from the Mississippi River and about a mile from the lake--an excellent spot to set up marine rental equipment business. And finally, older items are more durable, in my opinion, and easier to maintain than their modern day counterparts, thereby contributing to their value increase in their intrinsic worth. Petitioner apparently believes that owning property *359 that potentially could be used in a profit-related activity entitles one to current depreciation deductions. If this were the case, virtually all property would be eligible for depreciation. Petitioner apparently has taken no steps toward using the property in an activity engaged in for profit. His testimony shows that the property was intended for personal use, or for use in future farming activity which may or may not be deemed to be an activity engaged in for profit at some future date. Respondent has conceded that the house and one garage space were held for the production of income. To the extent that the other requirements for depreciation deductions are met, therefore, a portion of the amounts petitioner claimed may be allowable. Section 167(g) provides that the basis on which exhaustion, wear and tear, and obsolescence are to be allowed shall be the adjusted basis as provided in section 1011. Section 1.167(g)-1, Income Tax Regs., states the following: The basis upon which the allowance for depreciation is to be computed with respect to any property shall be the adjusted basis provided in section 1011 for the purpose of determining gain on the sale or other disposition *360 of such property. In the case of property which has not been used in the trade or business or held for the production of income and which is thereafter converted to such use, the fair market value on the date of such conversion, if less than the adjusted basis of the property at that time, is the basis for computing depreciation. Respondent has not asserted that the fair market value was lower than petitioner's adjusted basis at the time the property was converted to rental use, and thus we turn to section 1011. Section 1011 refers to section 1012, which provides the general rule that the basis of property shall be its cost. Petitioners bear the burden of proving the cost of the property at issue. Rule 142(a). Cf. Peterson v. Commissioner,T.C. Memo. 1970-181, in which we held that a taxpayer's estimates and approximations did not satisfy his burden of proof with respect to this issue. Petitioner purchased the 80-acre tract in 1971 for $8,000. At the time of purchase, the property contained a single story car repair garage which measured 24 by 32 feet. Between 1971 and 1979, petitioner made substantial improvements to the car repair garage, so that by 19 *361 it contained 7 bedrooms, one bathroom, a kitchen, a dining room and a living room. In addition, he added a well, septic system, and 3-car garage. He did not retain records to indicate the cost of these imrpovements, but claimed that such costs totaled $61,000. He submitted a 22-page list, prepared in 1979, which enumerates some of the items as to which he claimed depreciation deductions. The list includes farming equipment, vehicles, small engines, firewood tools, mechanic tools, carpentry, plumbling, marine equipment, household goods, building supplies, and other miscellaneous items. Petitioner testified that he prepared this list in 1979, using only his recollection of purchases made over the prior 8 years, because he had first decided to claim the depreciation deductions in 1979. Of the items on this list, the farming equipment, vehicles, small engines, firewood tools, and marine equipment clearly are ineligible for depreciation. Furthermore, petitioner testified that the household goods were not used by the tenant. On the other hand, we recognize that in order to transform a small car repair garage into a 7 bedroom house, petitioner must have incurred costs of tools, carpentry, *362 plumbing, and building supplies. In accordance with the principles of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928), we think it is reasonable to determine petitioner's approximate basis, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,supra at 544. After reviewing petitioner's itemized list, which he admits is based solely upon his own memory and estimations, we allow petitioner to include the following amounts in his cost basis: Mechanics' tools
$ 3,000.00
Carpentry tools
1,500.00
Plumbing tools
172.90
Building supplies
7,000.00
$11,672.90
Respondent has not suggested an apportionment of the original $8,000 purchase price between the land and the original structures upon it. [4] Petitioner asserts that $7,000 should be apportioned to the building. Without further evidence, however, we are unable to conclude that over 50 percent of the purchase price of an 80-acre tract should be allocated to a 24 by 32 foot structure. Accordingly, we allocate $4,000 of the original purchase price to the *363 dwelling unit. Finally, we must determine the useful life of petitioner's house. The regulations provide the following guide to determining useful life: (b) Useful life. For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer is his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions *364 and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's, trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. * * * [Sec. 1.167(a)-1(b), Income Tax Regs.] In 1962, the Treasury Department issued Rev. Proc. 62-21, 1962-2, C.B. 418, which promulgated "guideline" lives for various depreciable assets. Rev. Proc. 62-21 provides that the guideline life for "dwellings" is 45 years. 1962-2 C.B. at 420. The guideline lives of Rev. Proc. 62-21 are inapplicable to most assets placed in service after 1970, whose useful lives must be determined either under the elective Class Life Asset Depreciation Range System (ADR), or under the conventional facts and circumstances test. The Commissioner has not yet prescribed a class life for most *365 buildings and certain other section 1250 property. With respect to this property, therefore, Congress has provided the following: SEC. 5. APPLICATION OF CLASS LIFE SYSTEM TO REAL PROPERTY. (a) General Rule.--In the case of buildings and other items of section 1250 property (within the meaning of section 1250(c) of the Internal Revenue Code of 1954) placed in service before the effective date of the class lives first prescribed by the Secretary of the Treasury or his delegate under section 167(m) of such Code for the class in which such property falls, if an election under such section 167(m) applies to the taxpayer for the taxable year in which such property is placed in service, the taxpayer may, in accordance with regulations prescribed by the Secretary of the Treasury or his delegate, elect to determine the useful life of such property-- (1) under Revenue Procedure 62-21 (as amended and and supplemented) as in effect on December 31, 1970, or (2) on the facts and circumstances. [Pub. L. 93-625, sec. 5, 88 Stat. 2112, explained by S. Rept. No. 93-1357 (1974), 1975-1 C.B. 517, 518 and 523.] In his notice of deficiency, *366 respondent did not take issue with petitioner's claimed 18-year useful life, but rather denied the depreciation deduction for lack of a profit motive and for lack of substantiation. On brief, respondent asserts that the useful life of the dwelling unit is 45 years, in accordance with Rev. Proc. 62-21. The statutory language quoted above provides that taxpayers who have elected the ADR system may also elect to determine the useful life under the Rev. Proc. guidelines or to determine the useful life on the basis of the facts and circumstances. Moreover, sec. 3.04 of Rev. Proc. 62-21 provides: .04 Class life shorter than guideline life in case of new taxpayer or new guideline class.--Where the class life used by a taxpayer is shorter than the guideline life for a guideline class and there were no assets in that class in the immediately proceding taxable year (as, for example, in the case of the first taxable year of a new taxpayer), the depreciation deduction claimed by the taxpayer will not be disturbed if the class life used by the taxpayer is justified for the taxable year under examination on the basis of all the facts and circumstances (see *367 subsection .06 of this section). [1962-2 C.B. at 432-433; emphasis added.] In ordinary circumstances, petitioner would bear the burden of proving that his estimation of the useful life should be upheld. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). In this case, however, respondent did not make a determination with respect to useful life in the deficiency notice. With respect to new matters, Rule 142(a) places the burden of proof upon respondent. Petitioner testified that he estimated the useful life of his house on the basis of his experience as an engineer. He personally designed and constructed most of the improvements to the house, with only occasional help from casual laborers, and thus should be in a position to evaluate its useful life. Respondent did not present any evidence casting doubt on petitioner's estimates and argued only that the 45 year period as set forth in Rev. Proc. 62-21 should apply. In these circumstances we sustain petitioner's estimated useful life of the house. To reflect the concessions of the parties and our conclusions on the disputed issues, Decision will be entered under Rule 155. *368 Footnotes
1. Unless otherwise indicated, all section references are to the internal Revenue Code of 1954, as amended and in effect for the year 1979. All references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
2. In enumerating the items of equipment for which depreciation was claimed, the stipulation refers to "household goods." At trial, however, petitioner clarified that these goods were not used by the tenant. ↩
3. The parties stipulated that petitioner had agreed with a neighbor that the neighbor would oversee the wooded and cleared sections of the property in exchange for 75 percent of any profit derived from the land. Petitioner has received no income pursuant to this agreement. At trial, petitioner argued that the property was being used by his neighbor in a profit-related activity even though petitioner had not made any payments pursuant to the agreement. Petitioner did not present any evidence to prove that the property was being used in a profit-related activity. Thus he has failed to meet his burden of proof. Rule 142(a).↩
4. Sec. 1.167(a)-5, Income Tax Regs.↩, requires that when depreciable and nondepreciable property, such as land and buildings, are acquired for a lump sum, "the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time."