**UNITED STATES of America and Paul T. Boyll, Special Agent, Internal Revenue Service, Petitioners-Appellants,**

**v.**

**Richard E. MONSEY, Individually and as President of Industrial Dispensing Service, Inc., Respondent-Appellee.**

**UNITED STATES of America and Paul T. Boyll, Special Agent, Internal Revenue Service, Petitioners-Appellants,**

**v.**

**Robert J. EHA, Respondent-Appellee,**

**and**

**Richard E. Monsey and Gloria Lee Monsey, Intervenors-Appellees.**

**No. 18208.**

United States Court of Appeals, Seventh Circuit.

Aug. 27, 1970.

**1349**

Johnnie M. Walters, Asst. Atty. Gen., John M. Brant, Lee A. Jackson, Joseph M. Howard, Attys., Tax Division, Dept. of Justice, Washington, D. C., Stanley B. Miller, U. S. Atty., Indianapolis, Ind., for appellants; K. Edwin Applegate, U. S. Atty., of counsel.

James M. Secrest, Raymond W. Hilgedag, G. Weldon Johnson, Thomas P. Ewbank, Indianapolis, Ind., for appellees; Hilgedag, Johnson, Secrest & Murphy, Indianapolis, Ind., of counsel.

Before MURRAH,[1] Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal involves the validity of a discovery order issued by the district court to enable the respondents to attack the validity of three summonses served on them by a special agent of the Internal Revenue Service pursuant to Section 7602 of the Internal Revenue Code of 1954 (26 U.S.C. § 7602).

In March 1969, the Government filed a petition to enforce two summonses served on respondent Monsey, requiring him to give testimony before Special

1. Judge Murrah, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, is sitting by designation.

Agent Wuerth of the Intelligence Division of the Internal Revenue Service and to bring with him (1) all records pertaining to Milk Service, Inc. and Industrial Dispensing Service, Inc. received from certified public accountant John V. McGee, and (2) certain records of Milk Service, Inc. for the years 1963, 1964, and 1965. The summonses were entitled "In the matter of the tax liability of Richard E. and Gloria Lee Monsey," respondent's wife, for the years 1962, 1963, 1964, and 1965.

The petition and supporting affidavits stated that Special Agent Wuerth was assigned "to investigate the correct tax liabilities of Richard E. Monsey and Gloria Lee Monsey for the years 1962 through 1965," that respondent Monsey had declined to comply with the summonses, that the records Monsey had received from McGee still belonged to McGee, and that Special Agent Paul Boyll had been assigned to succeed Wuerth in the investigation. The petition asserted that the testimony and records sought were essential to the determination of the correct tax liabilities of Mr. and Mrs. Monsey for the calendar years 1962 through 1965.

In Monsey's answer, he asserted that the records and work papers prepared by McGee belonged to Monsey and that the first summons was issued by the special agent "for the illegal and improper purpose of obtaining evidence for use in a criminal prosecution," violating his rights under the Fourth, Fifth, and Sixth Amendments.

A similar enforcement petition was filed against respondent Eha, an employee of Industrial Dispensing Service, Inc., who was the recipient of the third summons, bearing a like caption. His answer included the denial of possession of books and records belonging to the two companies. He also denied having information with respect to the Monseys' tax liabilities.[2] Subsequently, Mr. and Mrs. Monsey were permitted to intervene with respect to the Eha enforcement proceedings and filed an answer asserting that his summons was also issued by Special Agent Wuerth "for the illegal and improper purpose of obtaining evidence for use in a criminal prosecution."

Respondents then began discovery proceedings to support their defense. They filed notices to take the depositions of four Internal Revenue Service employees and also served motions for the production of various documents. On October 29, 1969, the district court entered an order permitting respondents to take the depositions and to inspect and copy certain of the documents. However, execution of the order was stayed so that an interlocutory appeal could be perfected under 28 U.S.C. § 1292(b), and a panel of this Court subsequently allowed the Government's appeal.

The discovery sought by respondents was predicated upon their defense that the summonses were being abused by the Internal Revenue Service since they were being employed for the assertedly improper purpose of obtaining evidence for use in a criminal prosecution. The depositions and production of documents were ordered to determine the truth of the factual allegation that the summonses were being used in criminal rather than civil proceedings. The basis for the Government's interlocutory appeal in this case was to challenge the validity of that defense. The Government charged that the defense was fallacious and that the unnecessary discovery improperly delayed and interfered with the Internal Revenue Service's investigation of tax liabilities.

On April 3, 1970, however, during the pendency of this appeal, an indictment (No. 70–CR–131) was filed against respondent Richard E. Monsey. The Government also acknowledged at oral argument before this Court that all civil claims for tax liability are being postponed pending the criminal trial. These

---

2. Respondents raised the additional defense that the Government refused to have a public stenographer present at the meet-

ings. The Government has since acceded to the request, mooting that defense.

revelations call for reconsideration of the propriety of an interlocutory appeal under Section 1292(b) from the discovery order of the district court.

■ We conclude that the discovery order is no longer necessary to establish the factual basis for respondents' asserted defense. It was designed to disclose the relationship between the summonses issued by Special Agent Wuerth and investigations of Richard E. Monsey for criminal or civil liability. The outstanding indictment and suspension of civil claims amply define that relationship. Clearly, enforcement of the summonses under the present circumstances would serve primarily as an aid to the current criminal prosecutions. On the other hand, the dormant civil investigation would equally benefit from enforcement upon resumption of civil investigations after the conclusion of the criminal prosecution.

■ These occurrences establish an adequate factual basis for disposition of respondents' asserted defense of abusive enforcement. Factual elaboration of the circumstances surrounding the original issuance of these summonses is unnecessary. The current proceedings were brought pursuant to Sections 7402(b) and 7604(a) of the Internal Revenue Code (26 U.S.C. §§ 7402(b) and 7604(a)) rather than Section 7604(b) of the Code (26 U.S.C. § 7604(b)), thereby seeking enforcement of the Commissioner's summonses rather than punitive sanctions. Cf. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459. Enforcement enlists judicial powers of compulsion which are not automatically invocable. See 1 Davis, Administrative Law Treatise, § 3.12 (1958). The court may not permit its process to be abused. United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112; see Jaffe, The Judicial Enforcement of Administrative Orders, 76 Harv.L.Rev. 865 (1963). Inquiry into circumstances surrounding the original issuance of the summonses may reveal improper purposes which judicial enforcement should not sanction through assistance. See United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112; United States v. Roundtree, 420 F.2d 845 (5th Cir. 1969); cf. United States v. Mercurio, 418 F.2d 1213 (5th Cir. 1969), certiorari granted sub nom. Donaldson v. United States, 397 U.S. 933, 90 S.Ct. 942, 25 L.Ed.2d 114. Enforcement would be equally objectionable where the judicial action would itself effect an abuse of the summons. Events subsequent to administrative issuance may change circumstances to such an extent that enforcement of a summons may bring about improprieties. Such equitable considerations demand that the court consider intervening occurrences as well as the status quo at the date of issuance. These principles call here for consideration of the supervening indictment and postponement of civil claims. Cognizance of those facts does no more violence to administrative process than does inquiry into the good faith of the summons or contentions of harassment. To the extent that In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 16–17 (2d Cir. 1960), certiorari denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198, may suggest a contrary conclusion, we reject its reasoning.

These factors lead us to conclude that further disposition of this interlocutory appeal is unwarranted. The basis for our original order allowing this appeal has been undercut by the ensuing events. Since discovery is no longer necessary, the appeal from the district court's order has been rendered largely moot. Any judgment on the merits of respondents' defense to the summons enforcement petitions would now be advisory in character. Interference with the Government's investigations is no longer a hazard. The merits of the petitions may be adjudicated and reviewed in accordance with ordinary procedures without jeopardizing the weighty interests of either the Government or respondents. Cf. United States v. Salter, 421 F.2d 1393 (1st Cir. 1970). We, therefore, express no opinion on the ultimate issues of the case but remand it to the district court for

further proceedings consistent with this opinion.

The appeal permitted pursuant to 28 U.S.C. § 1292(b) is dismissed, and the cause is remanded to the district court.