UNITED STATES of America and Hubert J. Goodrich, Special Agent, Internal Revenue Service, Petitioners,

v.

Thomas F. ZACK, as President, et al., Respondents.

Civ. No. LV–2162 RDF.

United States District Court,
D. Nevada.

April 30, 1974.

V. DeVoe Heaton, U. S. Atty., Las Vegas, Nev., for petitioners.

Goodman, Snyder & Gang, Las Vegas, Nev., for respondents.

## ORDER DENYING PETITION TO ENFORCE INTERNAL REVENUE SUMMONS

### FACTS

ROGER D. FOLEY, Chief Judge.

This is a proceeding under the Internal Revenue Code of 1954, sections 7402(b) and 7604(a) (26 U.S.C. §§ 7402(b) and 7604(a)), to judicially enforce an Internal Revenue Service (IRS) administrative summons of books, records and documents for IRS examination (26 U.S.C. § 7602).

On March 7, 1973, an administrative summons, Treasury Form 2039, was served on Thomas F. Zack, DDS Chartered, and Thomas F. Zack, an individu-

al, as President of the corporation. Both entities are named as respondents in the instant petition. Respondents appeared pursuant to the summons on March 23, 1973, but refused to produce the books or records demanded or to testify fully. The IRS seeks an order directing respondents to testify and produce the data as is required and called for by the terms of the summons. The IRS petition alleges that Special Agent Hubert J. Goodrich, the officer issuing the summons, is participating in an investigation for the purpose of ascertaining the correct federal tax liabilities of the respondent corporation for the years 1970 and 1971.

This alleged civil investigation began after an informant contacted the IRS and conveyed information which was immediately relayed to Special Agent Goodrich, who in turn immediately began an investigation into possible criminal violations of the tax laws by Dr. Zack. After corroborating the fact that a double set of books was maintained in Dr. Zack's office, one for cash payments by patients and one for payments by check, and the possibility that only the check records were used to report taxable income, Special Agent Goodrich obtained a search warrant on March 1, 1973, on the basis that there was probable cause to believe that a violation of 26 U.S.C. § 7201 (attempt to evade or defeat the tax laws) was and had been occurring. On that same day, the records identified in the warrant were seized during a search of Dr. Zack's office by three IRS agents.

Exactly one week after the search warrant had been carried out, Special Agent Goodrich issued the administrative summons. This summons specified that:

> "3. Records previously seized on the search warrant on March 1, 1973 need not be produced."

The factual circumstances thus clearly show that the administrative summons is part of, and merely a continuation of, the investigation for which the search warrant was issued.

## ISSUE

Under the particular facts of this case, should this Court refuse to enforce the IRS administrative summons?

## CONCLUSION

Yes. As discussed below, this Court finds that the facts of this case, and the sequence in which they occurred, indicate that the civil investigative tool of an administrative summons is here sought to be improperly used for the sole purpose of obtaining information in a criminal investigation. It will not, therefore, be judicially enforced.

## DISCUSSION

The area of administrative summonses, as utilized by the IRS, has seen extensive litigation and appellant discussion, but this Court has been unable to find, and has not been referred to, any case law dealing with the enforceability of such a summons when it is issued on the heels of a prior search pursuant to a search warrant. To ascertain whether the IRS summons presented should be civilly enforced, then, the Court must delineate not only any relevant considerations that have heretofore been judicially expressed, but also the manner in which the accommodation of concerns for administrative effectiveness of the tax laws and protection of legal safeguards for the individual can most soundly be achieved under the unusual circumstances of this case.

The relatively recent history of the law of administrative summonses or subpoenas embodies a significant shift in judicial approaches to enforcement of such process. Prior to the 1940's, the Supreme Court was firmly against the use of subpoenas for investigations not related to law enforcement. See, e. g., Harriman v. ICC, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253 (1908); FTC v. Baltimore Grain Co., 267 U.S. 586, 45 S.Ct. 461, 69 L.Ed. 800 (1924); Jones v. SEC, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 (1936). The shift which then occurred is perhaps best seen in a dictum found in Oklahoma Press Pub. Co. v. Walling,

327 U.S. 186, 208–209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946):

> ". . . It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command."

Thus,

> "(f)ormer law that subpoenas were unenforceable unless they related to adjudication or to probable violations of law is now completely superseded; all that is now required is that the investigation be for a lawfully authorized purpose . . ."
>
> (1 Davis, Administrative Law Treatise, § 3.14, p. 230 (West 1958).)

■■ This latter approach is applicable to cases involving an IRS administrative summons. In Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964), the Supreme Court stated in dictum that:

> ". . . the witness may challenge the summons on any appropriate ground. This would include, as the circuits· have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773 . . . ."

It is interesting to note the full reversal that is evidenced by the above dictum: not only is exercise of the summons power no longer required to be in furtherance of a criminal investigation, but a criminal investigative purpose is considered improper. The broad language of *Reisman*, however, was quickly narrowed by the interpretations given it in the circuit courts. For example, in Wild v. United States, 362 F.2d 206, 208–209 (9th Cir. 1966), the Ninth Circuit stated:

> ". . . If the sole objective of an (IRS) investigation is to obtain evidence for use in a criminal prosecu-

tion, the purpose is not legitimate and enforcement should be denied. (Citation omitted.)

> "If, however, the objective of the investigation is to obtain information which may be utilized in determining whether there is civil liability for a tax or a tax plus penalty, then the summons may be enforced notwithstanding the fact that the information might also be used in a criminal prosecution."

A narrow reading of *Reisman* was specifically approved by the Supreme Court in Donaldson v. United States, 400 U.S. 517, 533, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971):

> "(The Reisman dictum is applicable to the situation) where the sole object of the investigation is to gather data for criminal prosecution . . . This is evident from the fact that the dictum itself embraces the citation of Boren v. Tucker, 239 F.2d 767, 772–773 (CA 9 1956), an opinion in which, at the pages cited, the Ninth Circuit very carefully distinguished United States v. O'Connor, 118 F.Supp. 248 (Mass.1953), a case where the taxpayer already was under indictment. The Reisman dictum is to be read in the light of its citation of Boren, and of Boren's own citation of O'Connor; when so read, the dictum comes into proper focus as applicable to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes."

To successfully challenge an IRS summons on the ground that it was issued for an improper purpose, then, a Court must be satisfied that the *only* purpose of the summons is to further a criminal tax investigation; for it is no defense to an enforcement proceeding that a duality of purposes exists, only one of which is improper. United States v. Bell, 448 F.2d 40, 41–42 (9th Cir. 1971); United States v. Egenberg, 443 F.2d 512, 516 (3rd Cir. 1971); United States v. Held, 435 F.2d 1361, 1364 (6th Cir. 1970); United States v. Stamp, 147 U.S.App.D.

C. 340, 458 F.2d 759 (1971), cert. denied, 406 U.S. 975, 92 S.Ct. 2424, 32 L. Ed.2d 675 (1971).

■■ The burden is upon a challenger to prove that there is no proper civil purpose for the summons. See United States v. Ferrone, 438 F.2d 381 (3rd Cir. 1971), cert. denied, 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971); United States v. Salter, 432 F.2d 697, 700–701 (1st Cir. 1970); United States v. Vey, 324 F.Supp. 552 (D.Pa.1971); contra, United States v. Rabinovitz, 305 F.Supp. 1218 (D.Wis.1969); United States v. Mothe, 303 F.Supp. 1366 (D. La.1969). This may well be an impossible burden to meet. The IRS is initially aided by the presumption that it is complying with its public duty, "and it cannot be assumed that (IRS agents) will abuse their authority in carrying out the examination (pursuant to an administrative summons)." United States v. First Nat. Bank of Mobile, 67 F.Supp. 616 (D.Ala.1946). And there is a general policy against judicial intervention in the investigative stage of tax matters because of the danger of undue delay in the collection of the revenues. DeMasters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963), cert. denied, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269 (1963). The IRS need give no assurance that records demanded in an administrative summons are unconnected with any criminal investigation, since the IRS may use such a summons if its investigation has both civil and criminal ramifications. United States v. Michigan Bell Telephone Co., 415 F.2d 1284 (6th Cir. 1969). Further, if the summons is issued by an IRS Special Agent, and it is conceded that such an agent principally—if not totally—is assigned to investigate possible criminal violations of the tax laws (see United States v. Mothe, supra, 303 F.Supp. at 1368; Wild v. United States, supra, 362 F.2d at 209), "(i)t is now undisputed that a special agent is authorized . . . to issue an (IRS) summons in aid of a tax investigation with civil and possible criminal consequences." Couch v. Unit-

ed States, 409 U.S. 322, 326, 93 S.Ct. 611, 614, 34 L.Ed.2d 548 (1973). See also United States v. Stribling, 437 F.2d 765, 773 (6th Cir. 1971), cert. denied, 402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137 (1971). Finally, even if the burden of showing a proper purpose is imposed upon the Government (see United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); Wild v. United States, supra, 362 F.2d at 208), the Court is confronted with the anomalous general rule that the Government is under no affirmative duty to disclose the nature or extent of its tax investigation (Hoffa v. United States, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U. S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); United States v. Stribling, 437 F.2d 765, 773 (6th Cir. 1971)) and the challenger is confronted with circumstances and a body of tax law which allow for almost uncontrovertible assertions by the IRS that a proper civil purpose will be furthered by enforcement of the summons, an assertion that at the very least shifts the burden of showing no proper burden exists onto the challenger.

Implicitly recognizing that administrative agencies have, in conjunction with their increasingly broad discretionary powers, an ever present opportunity for abuse of power, especially where an agency, such as the IRS, combines both investigative and prosecutorial powers, the Courts have been unwilling to construe the heavy burden placed upon one contesting an IRS summons as simply a way of giving carte blanche endorsement to the agency. The Courts have, and vigilantly guard, the power to determine whether an IRS investigation pursuant to a summons is being made in good faith and for one of the authorized purposes, and the power to relieve against oppressive procedures. See, e. g., United States v. Ryan, 320 F.2d 500 (6th Cir. 1963), aff'd, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122 (1964); United States v. Monsey, 429 F.2d 1348, 1351 (7th Cir. 1970); and see Jaffe, The Ju-

dicial Enforcement of Administrative Orders, 76 Harv.L.Rev. 865 (1963). The line between a civil and a criminal investigation is of no small import. Because of the potentiality of abuse of power and the substantially more drastic consequences which might ensue, a criminal investigation is subject to constitutional and judicially imposed limits, such as the general requirement of a search warrant which is specific and based upon probable cause, before the privacy and freedom of the individual may be intruded upon. Cf. Donaldson v. United States, supra, 400 U.S. at 536–541 (Douglas, J., concurring). In a civil investigation, however, the needs of the populace as a whole and the reduced threat of encroachment on basic liberties allow for the use of such tools as an administrative summons, which requires minimal particularity, only reasonable relevancy to the investigation, and no showing of probable cause. See United States v. Morton Salt Co., 338 U.S. 632, 651–652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Falsone v. United States, 205 F.2d 734 (5th Cir. 1953), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). Where a duality of purposes truly exists, one civil and the other criminal, concern for administrative effectiveness and judicial reluctance to interfere with valid investigative pursuits have militated against foreclosure of an agency's use of the administrative summons. See, e. g., Wild v. United States, supra, 362 F.2d 206. Nevertheless, mere assertion by the agency that a proper purpose exists cannot be controlling.

". . . Enforcement enlists judicial powers of compulsion which are not automatically invocable . . . The court may not permit its process to be abused . . . Inquiry into circumstances surrounding the original issuance of the summonses may reveal improper purposes which judicial enforcement should not sanction through assistance."

(United States v. Monsey, supra, 429 F.2d at 1351.) (Citations omitted.)

Isolation of a workable criteria with which a meaningful analysis of the circumstances surrounding the issuance of the summons can be made so as to determine whether that issuance was solely to further an improper purpose is in itself formidable. The Courts have refrained from any test which looks to subjective motivations of the agency.

". . . Even were such an intent discoverable, it would be irrelevant, since it is the Justice Department which makes the decision to prosecute —the Intelligence Division only makes recommendations and then it is only when such recommendations are 'warranted,' after attempting 'to encourage and achieve the highest possible degree of voluntary compliance with the internal revenue laws.' "

(United States v. Rutland Hospital, Inc., 320 F.Supp. 583, 585 (D.Vt. 1970).)

Rather, the Courts have sought objective criteria to aid in this inquiry.

■■ The objective approach which has emerged requires the Court to scrutinize the facts for the presence of some action on the part of the agency, or some legal procedure initiated, which is a clear hallmark or signpost of an investigation which in all probability is solely criminal in nature. Thus far, the cases have delineated two such circumstances: (1) criminal indictment and pending criminal prosecution (see, e. g., United States v. Ruggeiro, 425 F.2d 1069, 1070 (9th Cir. 1970), cert. denied, 401 U.S. 922, 91 S.Ct. 868, 27 L.Ed.2d 826 (1971)), and (2) recommendation for criminal prosecution made by a representative of the agency (see Donaldson v. United States, supra, 400 U.S. at 536; United States v. Billingsley, 331 F.Supp. 1091 (N.D.Okla.1971); United States v. Kyriaco, 326 F.Supp. 1184 (C.D.Cal. 1971)). A factor of like significance is present in the instant case. While the procuring of, and carrying out of, a search warrant is not the commencement of a prosecution (Bevington v. United States, 35 F.2d 584 (8th Cir. 1929), cert.

denied, 281 U.S. 721, 50 S.Ct. 237, 74 L. Ed. 1140), a search warrant:

". . . may be invoked only in furtherance of public prosecutions. Statutes providing for their issuance and execution are sustained, under constitutional provisions forbidding unreasonable search and seizure, only as a necessary means in the suppression of crime and the detection and punishment of criminals. Search warrants have no relation to civil process or trials and are not available to individuals in the course of civil proceedings, nor for the maintenance of any mere private right . . ."

(4 Wharton's Criminal Law and Procedure, § 1525, p. 125 (1957).)

See also 79 C.J.S. Searches and Seizures, § 63, p. 825. In the present case, the investigation appears wholly criminal in nature. Only an IRS Special Agent has been involved, and his investigation has proceeded from an informant's tip to a personal inquiry for corroboration, to the obtaining of a search warrant based on probable cause to believe that a crime was being committed. Although the investigation by a Special Agent is not sufficient basis for concluding that the sole purpose of the issuance of a summons is improper, it does tend to indicate such a possibility. See Donaldson v. United States, supra, 400 U.S. at 537 (Douglas, J., concurring); United States v. Weingarden, 333 F.Supp. 474 (E.D.Mich.1971). The obtaining of the search warrant, however, provides a clear indication of the purpose of the investigation, for the use of this police weapon is only allowed, like the use of the Grand Jury, in solely criminal investigations. Cf. United States v. Doe, 341 F.Supp. 1350, 1352 (S.D.N.Y.1972) (in discussing an attempted use of the Grand Jury in a civil investigation, the Court stated that even though most areas of law enforcement involve the prospects of both civil and criminal proceedings, "this is no justification for allowing the intentional use of a strictly criminal weapon . . . for the combined purposes.") Special Agent Goodrich illuminated the sole purpose of this investigation, by seeking, obtaining and carrying out a search warrant, no less brightly than if he had recommended criminal prosecution.

It is true that an administrative summons and the information gained thereby may properly be used to obtain a subsequent search warrant if, at the time the summons was enforced, it was in furtherance of at least a dual civil and criminal investigation. See United States v. Ferrone, 438 F.2d 381, 387–388 (3rd Cir. 1971); DiPiazza v. United States, 415 F.2d 99 (6th Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119, rehearing denied, 403 U.S. 924, 91 S.Ct. 2221, 29 L.Ed.2d 702. But such are not the circumstances of this case. The summons here presented was issued one week *after* a search warrant was executed against respondents' premises and records. The summons itself, as noted above, shows the intimate relationship between the warrant and the investigation sought to be pursued via the summons. Enforcement of the summons under these circumstances would be an abuse of judicial process and administrative power.

"To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power."

(United States v. O'Connor, 118 F. Supp. 248, 251 (D.Mass.1953).)

Because the IRS administrative summons is sought to be used solely for the improper purpose of furthering a criminal investigation, and therefore its enforcement must be denied, this Court need not reach the remaining issues presented by respondents.

The Government's petition is hereby denied.